## COMMERCIAL NAT. BANK OF WASHINGTON v. McCANDLISH.

Court of Appeals of District of Columbia.

Submitted December 6, 1927. Decided January 9, 1928.

No. 4574.

1. Bills and notes ☞352—Transaction in which bank "sells, transfers, assigns, and conveys" notes to plaintiff for disposal and application of proceeds to stipulated obligations, and on further guaranty by plaintiff of creditors and depositors, held sale for value (Code, §§ 1329, 1333).

Contract between banks, whereby one "sells, transfers, assigns, and conveys" notes to the other, which agreed to collect them and apply proceeds to payment of stipulated obligations, and to guaranty payment of creditors and depositors, held to show actual sale for value, within Code, § 1329, and not transaction in which grantee received notes solely in capacity of liquidating agent for grantor, notwithstanding that maker was accommodation party, within section 1333.

2. Bills and notes ☞210—Notes payable to bearer are negotiable by delivery (Code, §§ 1313, 1334).

Notes payable to bearer, within Code, § 1313, may be negotiated by delivery under section 1334.

3. Contracts ☞66—Assumption of liability at promisor's request is valuable consideration.

Assumption of liability at request of promisor is valuable consideration, as, for example, guaranty of promisor's debt.

Appeal from Supreme Court of the District of Columbia.

Action by the Commercial National Bank of Washington against Adam McCandlish. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

R. G. Donaldson, Hayden Johnson, V. E. West, and W. H. Holloway, all of Washington, D. C., for appellant.

W. A. Lee, W. W. Millan, and R. E. L. Smith, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB and VAN ORSDEL, Associate Justices.

MARTIN, Chief Justice. The appellant, as plaintiff below, brought suit against the appellee, as defendant, seeking to recover upon four certain promissory notes, bearing various dates, all executed by the defendant, made payable to the order of himself, and indorsed by him in blank, and in turn also indorsed in blank by the Terminal Commercial & Savings Bank. The defendant filed a plea admitting the execution of the notes, but averring that they were executed at the request of the Terminal Commercial & Savings Bank, solely for the accommodation of the bank and without consideration; also that plaintiff was not a bona fide holder of the notes for value, but held them in the capacity of a trustee for the Terminal Commercial & Savings Bank, and solely for the purpose of liquidating the affairs of that bank.

The case was tried below by the court without a jury, and after hearing the testimony the court entered a special finding to the effect that the notes were executed and delivered by the defendant, McCandlish, without consideration, and that the plaintiff bank

was not a holder thereof for value, but held them solely as a liquidating agent for the Terminal Bank. Judgment was accordingly entered in favor of the defendant, whereupon the plaintiff appealed.

The controlling facts in the case appear in the record without actual dispute. The notes sued upon were accommodation notes, executed by McCandlish at the request of one Lockwood, the vice president of the Terminal Bank, and were delivered to him without consideration for the bank. The notes were received by the bank, and were listed among its assets. Soon afterwards the Terminal Bank, being insolvent, desired to liquidate its affairs, and with this purpose in view a meeting was held by its officers with representatives of the Commercial National Bank. At this meeting the assets of the Terminal Bank, including these notes, were examined, and inquiry was made whether any of the notes were accommodation notes. It was stated in response that there was no accommodation note among the assets, with one exception not material here. Thereupon a written agreement was entered into by the banks, reading in part as follows, to wit:

First. "The first party (the Terminal Bank), in consideration of the obligations and covenants of the second party (the Commercial National Bank), set out below, hereby sells, transfers, assigns, and conveys to the second party all of its notes, ledger and other accounts, choses in action, bills receivable, real estate (described at the foot of this agreement), and all other assets, real, personal and mixed, of every kind and character, wheresoever the same may be, with full power and authority in the second party to receive, sell, collect, convey, or make other disposition of the same upon such terms and conditions as to price and otherwise that the second party may deem best and fit, in the discharge of its duties in this agreement assumed.

"And the first party hereby further agrees, through its proper officers, to indorse, transfer, and assign any and all of the said assets, and to execute by and through its appropriate and legal officers a good, sufficient, and valid deed of conveyance to the real estate described below, and to make such other and further assurances as the second party may from time to time require of it."

Second. "The second party, in consideration of the obligations of the first party, hereinbefore and hereinafter set forth, and of the sale and transfer of its assets set forth particularly in the first paragraph hereof, and in further consideration of the general

obligations and covenants, including the guaranty of the members of the board of directors of the first party to save the second party harmless from all loss or damage by reason of the liabilities assumed by the second party, which said covenants and guaranties are set forth in an instrument hereto attached and to be read as a part hereof, agrees and covenants to take, receive, collect, dispose of, and administer said assets, with no liability on account thereof, except for willful misconduct or bad faith on its part, and apply the proceeds derived therefrom to the extent, to which they will be sufficient for that purpose, to the payment of the following obligations, in the order following, to wit:

"(a) To the payment of all expenses, costs, charges by it incurred in the performance of its said duties, and a reasonable fee to its counsel for services in this behalf, the payment to itself of an amount equal to five per cent. of the face value, as per schedule attached, of the assets actually turned over to it.

"(b) To the payment to the Commercial National Bank of Washington of 6 per cent. interest on the amount of deposits and liabilities enumerated in Schedule 1 until the same shall have been paid in full out of the assets of the party of the first part. The party of the first part shall receive credit upon this interest charge for all earnings on the assets turned over to the party of the second part under the provisions of this agreement.

"(c) To the payment in full of the amounts due depositors of the first party.

"(d) To the payment and discharge of the other outstanding obligations of the first party as itemized and enumerated in a schedule attached to this agreement, as a part hereof, and marked Schedule No. 1.

"(e) To pay the balance of said net proceeds, if any, ratably to the first party's stockholders of record on this date or their proper assignees.

"The second party further agrees and covenants to guarantee, and does hereby guarantee, the full payment of the amounts due the depositors and the other indebtedness of the first party, set out and enumerated in the said Schedule No. 1."

Annexed to the written contract was a schedule of certain obligations of the Terminal Bank, in addition to its deposits, which the Commercial National Bank guaranteed as stated in the second article of the contract, and also a guaranty signed by the directors of the Terminal Bank reading as follows, to wit:

"In consideration of the duties, obligations, and covenants assumed and entered into by the Commercial National Bank of Washington in one certain agreement made between it and the Terminal Commercial & Savings Bank, of even date with these presents (which agreement we guarantee to be valid), and in further consideration of the sum of one dollar to each of us in hand paid, receipt whereof is hereby acknowledged, we hereby jointly and severally agree to, and by these presents do hereby, guarantee jointly and severally to indemnify and save harmless the Commercial National Bank of Washington from any loss of any kind or character by reason of the obligations assumed by it in its aforesaid agreement with the Terminal Commercial & Savings Bank of even date herewith."

In execution of the foregoing agreement the Terminal Bank delivered the notes sued upon, none of which was yet due or payable, to the Commercial National Bank, and indorsed them in blank. The Commercial National Bank thereupon proceeded to discharge its obligations under the contract, and by December, 1926, being the time of the trial, it had paid out the sum of $30,253.55 upon the obligations assumed thereunder, in excess of the amount realized by it from the assets of the Terminal Bank.

[1] The lower court, in construing the foregoing contract, held that the Commercial National Bank, when it received the notes, was acting solely in the capacity of a liquidating agent for the Terminal Bank, that it did not become a holder for value of the notes, and accordingly that the notes were still subject to the defense of no consideration. Upon this ground judgment was entered for the defendant.

In our opinion this construction of the written contract is erroneous. The transaction evidenced by the writing was an actual sale for value of the assets of the Terminal Bank, including these notes, to the Commercial National Bank, and the latter thereby became the sole owner of them. It is true that the consideration to be paid by the purchasing bank was to be determined in part by the amount thereafter realized by it from the assets. But this was nevertheless a valid consideration for the transfer. And moreover it was not the only consideration, for the Commercial National Bank also agreed and covenanted to guarantee the full payment of the amounts due to the depositors and certain other creditors of the Terminal Bank, regardless of the amount which it might be able to realize from the assets. In other words the Commercial National Bank, as part consideration for the assets thus transferred to it, became the unconditional guarantor of the obligations owing by the Terminal Bank to its depositors and certain other creditors. This guaranty accrued to the benefit of the depositors and other creditors of the Terminal Bank, and entitled them to bring actions on their own behalf to enforce it. It constituted a valid consideration for the transfer of the notes sued upon. It is true that the directors of the Terminal Bank agreed in writing that the Commercial National Bank should suffer no loss by reason of the guaranty; but this did not alter the obligations of the latter bank under the guaranty, nor does it appear that the directors' agreement possessed any pecuniary value.

[2, 3] The record therefore discloses that these notes were negotiable; they were payable to bearer, and could be negotiated by delivery. Sections 1313, 1334, D. C. Code; Williamson B. & T. Co. v. Miles, 113 Ark. 342, 169 S. W. 368; 8 C. J. pp. 176, 382. The transfer was for value, which is defined as "any consideration sufficient to support a simple contract." Section 1329, D. C. Code. "The assumption of a liability at the request of the promisor is a valuable consideration, as, for example, a guaranty of the promisor's debt. * * *" 15 C. J. 320. An accommodation party upon a negotiable instrument is liable on the instrument to a holder for value, notwithstanding such holder, at the time of taking the instrument, knew him to be only an accommodation party. Section 1333, D. C. Code. In the instant case, moreover, the holder had no such knowledge when taking the instruments, and, as already stated, they were negotiated before maturity.

It is also contended by appellant that, if McCandlish gave these notes to the Terminal Bank as accommodation notes, without consideration, upon the understanding that he should never be called upon to pay them, his only purpose in so doing must have been to aid the bank in the fraudulent and illegal purpose of deceiving the bank examiner, or misleading other persons having dealings with the bank. It is argued that under these circumstances McCandlish is estopped from setting up the want of consideration as a defense against the notes, especially as against a creditor of the bank. Among the authorities cited by appellant in support of this contention is State Bank of Moore v. Forsyth, 41 Mont. 249, 108 P. 914, 28 L. R. A. (N. S.) 501, wherein the court said:

"We can conceive of no circumstances under which a bank can require an accommo-

dation note on its own account for any legitimate purpose. It seems to us that the mere request carries notice that the purpose for which such paper is intended to be used is not a lawful one. What legitimate end could possibly be served by carrying in a bank commercial paper which was not to be paid under any circumstances? Obviously none. The only possible design would be to deceive some one, either the stockholders, the depositors, or the bank examiner, who acts for them in the name of the state. It is only an innocent party who may take advantage of such a defense as that attempted to be interposed in this case, when other innocent parties have suffered."

It is not necessary, however, for us to pass upon the question of estoppel in this case, for in our opinion the appellant is clearly a holder for value of the notes, and judgment should have been entered below in its favor.

The judgment of the lower court is reversed, with costs, and the cause is remanded for further proceedings not inconsistent herewith.

Reversed.