**Mike KHALAF, Appellant,**

**v.**

**Basil POLITIS and American Employers Insurance Company, Appellees.**

**No. 2629.**

Municipal Court of Appeals for the District of Columbia.

Argued Sept. 26, 1960.

Decided Dec. 6, 1960.

Daniel I. Sherry, Washington, D. C., for appellant.

Peter G. Chaconas, Washington, D. C., for appellee Basil Politis.

Frank L. Shigo, Washington, D. C., for appellee American Employers Ins. Co.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

QUINN, Associate Judge.

Appellant, one of two shareholders, held ninety percent of the stock in Sheherazade, Inc., owner of the Omar Khayyam restaurant. He engaged appellee Politis, a licensed real estate broker in the District of Columbia, to locate a buyer for the restaurant under an exclusive listing arrangement which provided a ten percent commission for negotiating the transaction. Subsequently, Politis produced a Mr. Auger who entered into a "sales and purchasing agreement" promising to pay $55,000 for the business, conditioned upon a transfer to him of all the Sheherazade stock. Under the terms of the sale the sum of $5,000 was concurrently delivered to and retained by Politis as a deposit on the conveyance and as an advance on his commission.

Concerning the contemplated stock transfer, appellant and Auger executed a second instrument which stated: "The purchase price for the stock shall be the difference between $57,500 [1] and the debts of the Corporation, which the Seller represents to be as of this date the sum of $32,720.70 * *." Provision was also made therein for a suitable adjustment in the purchase price should the debts upon audit prove more or less than the amount represented.[2] It was not stipulated in the agreement nor is it clear from the record whether Auger assumed the debts of the corporation or whether the full amount of $57,500 was paid to appellant with the expectation that he would satisfy the debts from the proceeds allocated to that purpose. Whichever was the course followed, it does not affect the decision of this case.

Thereafter, appellant brought this action against Politis and his surety, American Employers Insurance Company, alleging that Politis was wrongfully withholding $3,-000 of the $5,000 down payment left with him. At trial and on this appeal he has maintained the position that Politis was entitled to a commission of $2,183.17 on the purchase price, as defined in the second instrument, of $21,831.67. On the other hand, Politis counterclaimed for $500, contending that he had earned a commission of $5,500 on a purchase price of $55,000. The trial court found for appellees on appellant's claim and awarded Politis judgment on his counterclaim.

The question posed then is which figure is to be regarded as the purchase price for the purpose of computing the commission admittedly due. Should the commission be measured on the basis of $55,000, the price quoted in the first contract, or $21,831.67, the "purchase price" indicated by the second agreement?

Though variously expressed,[3] there seems to be uniform agreement that the term "purchase price" denotes a consideration, usually monetary, received in exchange for a property interest conveyed. It signifies the expenditure required of a buyer to bring about an agreed return from a seller. In the present case, due to the efforts of Politis an agreement was drawn obligating Auger to pay, and entitling appellant to receive, $55,000 for the Omar Khayyam restaurant. Under any definition or interpretation this must be considered as the purchase price for the conveyance. At that time Politis completed what he had been called upon to perform for his client, namely, the procurement of a satisfactory buyer on mutually

1. This figure includes the price of $55,000 specified in the first contract plus an additional $2,500 for certain inventory.

2. From the difference of $24,779.30, appellant later allowed a deduction of $2,-947.63, leaving a final balance of $21,831.-67 as the purchase price under this formula.

3. See 72 C.J.S. Price p. 498.

acceptable terms. All that was left for appellant was the formal and perfunctory duty of delivering the stock certificates.

It appears that appellant then became dissatisfied with the commission arrangement and sought to abridge this obligation by the restrictive definition of purchase price contained in the second, subsidiary agreement dealing with the stock transfer. While that meaning might govern the relations of the contracting parties, it clearly did not affect the prior understanding of Politis and appellant. They must be held to have bargained on the basis of the total benefit which the seller would realize on the sale.

Affirmed.