ROBERT SHELTON RUSS, JR. ET UX.
*v.* DONALD H. BARNES ET UX.

[No. 268, September Term, 1974.]

*Decided December 18, 1974.*

The cause was argued before ORTH, C. J., and GILBERT and LOWE, JJ.

*Alan Bernstein,* with whom was *Lawrence B. Goldstein* on the brief, for appellants.

*Frank B. Haskell, III,* with whom were *Mitchell, Clagett & Haskell* on the brief, for appellees.

LOWE, J., delivered the opinion of the Court.

The issue presented us concerns the validity of a novation

of a land installment contract by the original parties.[1] On September 22, 1961 appellants, Robert Shelton Russ, Jr. and Catherine Russ, entered into a land installment contract pursuant to Md. Code, Art. 21, §§ 10-101 through 10-107, now Real Property Art., § 10-100 *et seq.*, for the purchase of certain improved real estate in Anne Arundel County from Donald H. and Novilla A. Barnes, appellees. Almost eleven years later, on May 25, 1972, the same parties entered into a "Sales Contract" for the same land which was consummated by execution of deed, deed of trust and note settled on August 7, 1972. In the latter agreement, the purchase price was $1,000.00 less than it had been in the original agreement and was to be paid "to the Sellers in the form of a deed of trust . . . ." at an interest rate increase of 1-1/2%. The monthly payments under the trust were substantially larger than the payments which had been required under the original agreement. The subsequent agreement made no reference to the original nor did it give appellants credit for the amounts paid under the original land installment contract. Payments already made by the Russes apparently included a $300.00 down payment and monthly installments from September 1961 to May 1972, of $104.50, which amount included interest at 6% per annum.

On November 28, 1973 appellants sued in the Circuit Court for Anne Arundel County (in Equity) for a rescission of the contract of May 25, 1972, a validation of the September 22, 1961 contract to which they ask that payments made on the May 25, 1972 contract be credited, "And such other and further relief as the nature of this cause may require." Appellees' answer was followed by their motion for summary judgment which contained an affidavit by appellees' counsel. It stated that settlement under the subsequent agreement was initially scheduled for July 26, 1972. On that date, however, appellants showed him for the first time the unrecorded contract of September 22, 1961. The settlement was cancelled and appellants were

---

1. "In this State the term 'novation' has been applied to a new contract between the parties as well as to a new contract involving one or more new parties." Hudson v. Maryland State Housing Co., 207 Md. 320, 326.

admonished to consult with independent counsel with respect to the 1961 instrument.

Apparently the settlement was rescheduled for August 7, 1972, for at that time affiant recites the execution of the deed, deed of trust, note and settlement sheet by appellants. Additionally the affiant described a letter both on his firm's stationery and addressed to his firm, signed by appellants, spelling out their full "understanding" of "matters" reached therein. These "matters" included:

1. Inspection and understanding of a title insurance binder.
2. The waiver of truth in lending disclosures.[2]
3. The increase of $1,068.10 in the deed of trust over the purchase price to include items set forth on the settlement sheet.
4. A recitation that pursuant to counsel's admonition they had sought independent counsel for the unrecorded Land Installment Contract and were now willing to settle on the basis of the May 25, 1972 contract.

Citing *Hudson v. Maryland State Housing Co.,* 207 Md. 320, 325-326, the Chancellor found " . . . that the parties knowingly and willingly entered into the contract and were given every opportunity to determine whether or not it was necessary to do so; therefore, the parties could and did enter into a new land installment contract which superseded the first contract . . . . The Court finds that there is no dispute as to the material facts of this case and the defendants are entitled to the judgment as a matter of law." We do not find *Hudson* apposite to the facts here and are more troubled than was the Chancellor. We find material facts in genuine dispute.

The claims asserted by appellants set forth precisely the predicament the Land Installment Contract Act was intended to prevent. When legislative intent is discernible,

---

**2.** Neither the applicability of the statutes nor the right to waive is an issue before us. We offer no opinion thereon.

we are bound by the policy espoused by that predominant branch of government.[2a] One purpose of the Act was to provide a mechanism whereby a vendee would not lose the equity and interest he had built in his home in the event of default. *Report to the General Assembly of 1951,* Volume II, Item 71, p. A-44.[3] *See also Spruell v. Blythe,* 215 Md. 117, 121-122. Here there is no allegation of default.[4] Yet appellants appear to have lost a decade of equity, built month by month, without compensation or consideration for the loss.

Appellees contend that the execution of the 1972 contract effected a novation extinguishing the 1961 contract. They quote from *District National Bank of Washington v. Mordecai,* 133 Md. 419, 427:

> "A novation may be made by the substitution of a new obligation or contract between the same parties, with the intent to extinguish the old obligation or contract; but it does not result from the substitution of one paper writing for another, or one evidence of debt for another, or one contract for another, unless such substitution is made with the intention of all the parties concerned to extinguish the old one."

Appellants having signed that they were "willing to settle on the basis of the contract dated May 25, 1972, despite the execution of the prior contract" bolsters appellees' argument

---

**2a.** "The legislative department is nearest to the source of power, and is manifestly the predominant branch of government." Crane v. Meginnis, 1 Gill and Johnson 463, 472.

**3.** The Land Installment Contract Act, Real Property Art., Title 10, Subtitle 1, was enacted through Senate Bill 17 of 1951 having emanated from the Legislative Council. It was recommended to the Council by Mr. (now Judge) Marshall A. Levin and the Legal Aid Bureau as a precursor to the now more prevalent consumer legislation being considered.

**4.** The factual record is restricted to affidavits. That of appellant reads:

"That my husband and I faithfully met our obligations and made the monthly payments as evidenced by the attached copy of the payment book signed by Donald Barnes, that is attached hereto as Attachment A, that after March, 1965, the payment book was not used, however, all payments were made either by check or money order."

that a novation was intended by the parties. The second step of their argument is that the 1972 agreement as well as the 1961 agreement were merged in the execution of the deed.

We are unable to agree with appellees over-simplified attempt to apply contract law, especially when the subject matter is a Land Installment agreement — so vulnerable to abuse that it has been cloaked with special protections by the Legislature.

Analyzing appellees' assertion that the 1972 contract effected a novation, we must consider the necessary elements of that legal metamorphosis:

> " 'A 'novation' is a new contractual relation, and contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract; and (4) the extinguishment of the old contract, by the substitution for it of the new one . . . .' " *Balt. Academy of the Visitation v. Schapiro*, 169 Md. 332, 338-339 quoting *Dist. Nat. Bank of Wash. v. Mordecai*, 133 Md. 419.

A novation "necessarily involves the immediate discharge of an old debt or duty, or part of it, and the creation of a new one. There is no novation until this has been accomplished." 15 *Williston on Contracts* (Jaeger ed.) § 1865, 587. Here the record indicates on the limited facts adduced on the motion that the vendor-appellees discharged no prior debt of appellants (vendees), rather they increased that debt and discharged only the *equity* accumulated by appellants over the preceding eleven years. The 1972 contract resulted in a gain to appellees and a loss to appellants of the principal paid during that period plus an increase of 1-1/2% on the interest rate.[5] The question of what if any consideration was given (or obligation foregone) by appellees provides a "genuine dispute as to [a] material fact . . . ." Md. Rule

---

5. Responsibility for the lack of pecuniary detail may be laid at the feet of appellees who failed to provide the annual financial statements pursuant to Real Property Art., Title X, § 10-107 as will be discussed, *infra*.

610. A court of conscience may inquire into the consideration upon which a contract is based even though it recites value received and is under seal, nor is the deed of trust immune from challenge for want of consideration. *Stack v. Marney,* 252 Md. 43, 47. If the court finds that the thing promised or done is already a legal obligation of appellee, such promise or act is not a valuable consideration to support another promise or agreement. *Berger v. Burkoff,* 200 Md. 561.

Also at issue, through the affidavit of Mrs. Russ, was the question of Mr. Russ' competency to contract, as well as the contention that appellants were "intimidated" by "threats and coercion" of "immediate eviction and loss of the aforesaid property unless [they] signed a new contract." In support of the latter contention, appellants appended a handwritten letter from Mr. Barnes:

"5-15-69

"Hi —

*If* you don't let the appraiser in for a few minutes —I'll get the Sheriff & we'll kick the door down.—

*Now* if you wan't to be stupid & stubborn both — you'll pay all the costs — involved, or else —

*The* house will be — and has to be appraised wheither you buy it or not —

The 35.00 I have paid to have it appraised will be forfeited unless you let the appraiser take a quick look — *I don't like — your bullshit!*

Either cooperate or I'll start foreclosure proceedings & that will cost you another $200.00 or 300.00 —

Call Mr. Moore

301-776-3355 & make & appointment with him to look at it — & I hope you can get it re financed —

*The* house will be *sold regardless* —

Don Barnes

If you don't let him in the next time that will be another $35.00 again lost.

I just talked to Max Schwartz & he said he thought you didn't understand — OK.?"

In determing whether a summary judgment was properly granted, our responsibility on appeal is to decide whether a factual issue existed from a review of the record before us, and on doing so we must resolve all inferences against the moving party. *Rooney v. Statewide Plumbing,* 265 Md. 559, 563. It seems to us that the issues of consideration, competency and duress in these circumstances required factual findings and that the facts in dispute were such that their resolution would affect the outcome of the case. *Id.* at 264. Appellants should have been put to their proofs on each of those issues, but that opportunity was denied them by the summary judgment.

Although the preceding discussion of unresolved factual disputes disposes of the question of the propriety of the grant of summary judgment, we feel that certain additional observations, particularly with regard to the 1961 contract, are in order. On remand, they may provide further guidance to the trial court in reaching a just determination and fashioning an appropriate remedy.

The record indicates that the appellees as vendors under the original agreement failed to record the 1961 contract pursuant to Real Property Art. § 10-102 (f), nor have they furnished the annual financial statement as required by § 10-107. Although there is no penalty set forth for noncompliance with § 10-107, the failure of appellees to provide any of the required annual financial statements left appellants without important information to which they were entitled under the Act. This statement should have included:

"(a) The total amount paid for

(1) Ground rent, if any,

(2) Insurance,

(3) Taxes and other periodic charges;

(b) The amount credited to principal and interest; and

(c) The balance due."

Without that information, appellants had no way of knowing whether the original purchase price of $11,000 had, by their monthly payments of $104.50, been reduced by 40% thus enabling them to "demand a conveyance of the premises," subject to a purchase money mortgage for the balance. Real Property Art. § 10-105. Surely, if they could have demanded conveyance as of right, and knew they could, they would have reacted differently when confronted with the demand that they execute a substitute contract because their house was to be "sold regardless." The quandary in which they found themselves, absent this knowledge, is at the very heart of the "serious actual or potential evils" sought to be corrected by the Act. *Spruell*, 215 Md. at 122 quoting *Hudson*, 207 Md. at 331. *See also Report to the General Assembly of 1951, supra.*

§ 10-102 (f), requiring recordation of the land installment contract, does have a stringent penalty clause, though remedial in nature. It provides vendee an "unconditional right to cancel the contract and receive immediate refund of all payments and deposits made on account of or in contemplation of the contract," in the event vendor fails to record the contract as required.[6] The Chancellor gives no indication to us whether he has ruled that that section has been waived or whether, indeed, he has determined that it is a "right so charged or colored with the public interest [that waiver] will not be allowed where it would thwart the legislative policy which it was designed to effectuate." *Brooklyn Bank v. O'Neil*, 324 U. S. 697, 704.

On the other hand, the court on remand should remain cognizant that appellants affirmed in writing that they had consulted counsel before settlement and were satisfied to proceed. Recognizing the laudable purpose behind consumer protection laws, there is a point beyond which government cannot and should not go in an effort to protect a person from his own actions. When one seems so bent on

---

**6.** We note, contrary to what appellees suggest, that the vendor's obligation to record exists independent of any specific request by the vendee.

self-destruction that he issues or affirms false statements in order to expedite that result, he takes himself beyond the sanctuary such laws provide. The incongruity of asking a court of conscience to protect oneself from one's own falsehoods is self-evident.

Yet here we are troubled by that which we hold should have been matters of proof. The summary judgment was imprudently granted.

> *Judgment reversed; case remanded for further proceedings; costs to be paid by appellees.*