484 A.2d 1033

**Rajindar S. SIDHU, et ux.**

v.

**John J. SHIGO, et ux.**

**No. 329, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

Dec. 10, 1984.

Certiorari Denied April 22, 1985.

62

Robert O. Johnston and Susan Ellis Wild, Silver Spring (Shulman, Rogers, Gandal, Tobin & Ecker, P.A., Silver Spring, on the brief), for appellants.

Gary J. Kolb, Annapolis (Jane F. Nathan and Sinclair, Chapdelaine & Kolb, Annapolis, on the brief), for appellees.

Argued before MOYLAN, GARRITY and ADKINS, JJ.

ADKINS, Judge.

Appellants Rajindar and Jagjeet Sidhu contracted to purchase certain improved real property in Anne Arundel County from appellees John and Ruth Shigo. The principal question before us is whether that contract was subject to the Maryland Land Installment Contract Act. Md.Real Prop.Code Ann. §§ 10–101—110 (1981 Repl.Vol.). If it was, since the contract concededly did not comply with certain of the protective provisions of the Act, appellants were entitled to avoid the contract and to recover all payments made under it. The Circuit Court for Anne Arundel County (Heise, J.) thought otherwise and dismissed appellants' bill of complaint.

In § 10–101(b), the Act defines a "[l]and installment contract" as

a legally binding executory agreement under which (1) the vendor agrees to sell an interest in [certain types of real] property to the purchaser and the purchaser agrees

to pay the *purchase price* in five or more subsequent payments exclusive of the down payment, if any, and (2) the vendor retains title as security for the purchaser's obligation [emphasis supplied].

The Act imposes stringent obligations on the vendor. One of them is a requirement that within fifteen days after the contract has been signed by both parties

the vendor shall cause the contract to be recorded among the land records of the county where the property lies and shall mail the recorder's [receipt] to the purchaser. This duty of recordation and mailing of receipt shall be written clearly or printed on the contract. Failure to do so, or to record as required under this section within the time stipulated, gives the purchaser the unconditional right to cancel the contract and to receive immediate refund of all payments and deposits on account of or in contemplation of the contract.

Md.Real Prop.Code Ann. § 10–102(f). Since appellees, as vendors, did not comply with § 10–102(f), appellants' action was well-founded if, but only if, the transaction was a land installment contract, as defined by § 10–101(b). Whether it was depends upon whether appellants, as purchasers, agreed to pay "the purchase price in five or more payments exclusive of the down payment, if any...."

As to that, the contract before us, dated October 6, 1981, provided for appellants' purchase of appellees' home for $298,000. There was a down payment of $5,000. The "principal balance" of $293,000 was to be paid as follows:

$50,000.00 shall be due from [appellants] to [appellees] on November 4, 1981.... Commencing November 4, 1981, adjusted to date of possession, if earlier, [appellants] shall make interest only payments of $2,751.67 per month, in advance on the 4th day of each succeeding month.... The rate of interest is 13.6% per annum. $215,000.00 of the $243,000.00 balance due [appellees] shall be due and payable on or before October 6, 1983. Upon payment of said $215,000.00 [appellees] shall pay off the first mortgage and second deed of trust, and shall take back a note

for the balance of $28,000.00 at 12% interest per annum, amortized over 25 years, with a balloon payment at the end of two years.

After setting forth other terms and conditions of the sale the contract further provided: "And upon payment as above provided of the unpaid purchase money, a deed for the property containing covenants of special warranty and further assurance, shall be executed at [appellants'] expense by [appellees], which shall convey the property to [appellants]."

Pursuant to this contract, appellants made the down payment. They made the $50,000 payment. They took possession of the property. They made the twenty-three monthly interest payments of $2,751.67 each. They arranged for settlement under the contract to occur on August 30, 1983. That settlement never took place because on August 14 appellants proposed a modification of the contract whereby the purchase price would be reduced and appellees would pay certain loan origination fees. Appellees refused to agree to the changes. This suit followed.

The question before the trial court was, and before us is, whether appellants agreed "to pay the purchase price in five or more payments exclusive of the down payment...." § 10–101(b). They argue that the twenty-three interest payments bring the contract within the statutory definition. Anticipating possible rejection of this contention, they further aver that the contemplated payments on the $28,000 note suffice to place the contract under the Act. If they are wrong as to both points, it is clear that the contract called for only two payments, not the five payments, exclusive of the down payment, required to invoke the sanctions of the Act.

■ The Act speaks in terms of payments of "the purchase price." We have not been cited to nor have we found any Maryland case construing the term "purchase price" as used in the Act. In our effort to ascertain the relevant legislative intent we begin with the proposition that if "the

provisions of the statute are clear and unambiguous" we need not go beyond this plain language to "ascertain the intention of the legislature." *In Re Arnold M.*, 298 Md. 515, 520–21, 471 A.2d 313 (1984).

■ So far as the twenty-three interest payments are concerned, we hold that they were not payments on account of the "purchase price" of the property. " '[P]urchase price' denotes a consideration, usually monetary, received in exchange for a property interest conveyed." *Khalaf v. Politis*, 165 A.2d 782, 783 (D.C.Mun.App.1960). It is the "[p]rice agreed upon as a consideration for which property or goods are sold and purchased." Black's Law Dictionary (5th ed. 1975). Interest, on the other hand, is

> the compensation allowed by law or fixed by the parties for the use or forebearance or detention of money.... Basic cost of borrowing money or buying on installment contract. Payments a borrower pays a lender for the use of the money [citation omitted]. *Id.*

By way of illustrating the distinction between purchase price and interest, one may turn to the treatment of capital gain for tax purposes. That gain is determined by subtracting the adjusted basis of the property (purchase price plus capital improvements) from the amount received at sale. 26 U.S.C. § 1011(a). Interest paid in connection with money borrowed towards the purchase price is not computed as part of the cost basis. *See* 26 U.S.C. § 1016. That is also true with respect to computing depreciation or depreciable property. *See* 26 U.S.C. § 167(g).

The purchase price of the home appellants were purchasing was $298,000. Payments made on account of that sum were payments of the "purchase price." The twenty-three interest payments were not. They were payments made by appellants for the use of the money they had in effect borrowed from appellees by deferring payment of a portion of the purchase price.

■ It is true that the Act makes provision for the application of payments made under it. Section 10–103(c) directs that

installment payments first shall be applied by the vendor to the payment of:

(1) Taxes ... and other public charges levied or assessed against the property and paid by the vendor;

(2) Any ground rent paid by the vendor;

(3) Insurance premiums on the property paid by the vendor;

(4) Interest on unpaid balance owed by the purchaser...;

(5) Principal balance owed by purchaser.

These provisions, however, apply when the installment payments are made in specified sums without differentiation as to what part of each sum falls into which category. They do not apply to a contract which, like this one, carefully delineates those payments that are interest and those that are principal and which also, like this one, requires the purchaser to make specified payments on account of taxes and insurance. Section 10–103(c) does not purport to convert interest payments into payments of the purchase price.

■ The section itself shows the distinction between the two types of payments, and the distinction between "installment payments" in general and payments of the "[p]rincipal balance" or purchase price. When installment payments are all-inclusive, embodying both interest and principal, five or more of those payments will bring a contract under the Act if its other criteria are satisfied. That is not so when interest and principal payments are separately specified, unless there are at least five principal payments in addition to the down payment.

This same result follows if we assume some ambiguity in the statutory language and seek such additional aids to its interpretation as legislative purpose. *Board of Examiners in Optometry v. Spitz*, 300 Md. 466, 474–75, 479 A.2d 363 (1984).

The Act was the product of "recommendations made to the Legislative Council by Mr. [now Judge] Marshall A. Levin ... and the Legal Aid Bureau of Baltimore City." *Legislative Council Report to the General Assembly of 1951*, Vol. 2, Item 71, p. A–44. Those recommendations no doubt flowed from Judge Levin's perceptive analysis of the evils of the land installment contract system. Levin, *Maryland Rule on Forfeiture Under Land Installment Contracts ... A Suggested Reform*, 9 Md.L.Rev. 99 (1948). The chief problem, in his view, was that if the installment vendor drew the contract shrewdly, the purchasers might make many payments on account of the purchase price, default on the last one, and lose the property as well as all that they had paid.

As a result of its study, the Legislative Council found that:

> In many instances [a land installment] agreement has been made between landlord and tenant, as an attempt to circumvent rent control regulations by substituting the relationship of seller and buyer. One result is that the buyer-tenant could build up a considerable equity in the property and then be dispossessed and lose all his equity in case of any default.

*Legislative Council Report to the General Assembly of 1951, supra.* The Council proposed to remedy these problems by submitting a bill that "requires that the buyer get a copy of any such agreement he enters into and [by providing] a formula for guaranteeing that he will not lose all his interest in the property in the event of default." *Id. See also Spruell v. Blythe*, 215 Md. 117, 120–21, 137 A.2d 183 (1957); *Hudson v. Md. State Housing Co.*, 207 Md. 320, 331, 114 A.2d 421 (1955); *Russ v. Barnes*, 23 Md.App. 691, 694–95, 329 A.2d 767 (1974).

The Council bill (Ch. 596, Laws of 1951), among other things, provided that the installment contract purchaser could protect his equity by demanding a conveyance of the property after payment of 40 percent or more of the "original cash price." See § 10–105(a). In addition, after de-

fault, the contract was to continue in full force and effect if the purchaser made good the default. *See* § 10–106. And the remedies of the vendor were limited. *See* Md.Rule W79, which contains the present provisions as to foreclosure.

The problems the Act seeks to remedy are not implicated by interest only payments in the contract in this case. There is, of course, no suggestion of any attempt to bypass rent control regulations. Nor are appellants faced with any loss of equity produced by their interest payments. The interest payments did not build up any equity in the property because they were not payments on account of the purchase price. The contract, moreover, provides (as we shall later see) for a conveyance to appellants upon their payment of 40 percent or more of the purchase price, thus protecting the equity that would have been produced by that payment of principal. Whether we look to the plain language of the statute or to the underlying purposes of the Act, we reach the same result: the interest payments were not payments of the purchase price of the property.

■ Appellants complain bitterly because the trial judge admitted parol evidence as to the parties' intent with respect to the interest payments. Whether this was error we need not decide. We have reviewed the contract without benefit of this parol evidence and determined that the interest payments were not payments of the purchase price; hence, they did not bring the contract within the Act. Even if the chancellor erred in admitting and considering parol evidence about the interest payments, the error was harmless. His conclusion was correct, even though he may have been right for the wrong reasons.[1] *Webster v. State,* 299 Md. 581, 610, 474 A.2d 1305 (1984).

---

1. Nor need we consider appellants' argument that the chancellor improperly admitted parol evidence to the effect that the parties (or their lawyers) did not intend the contract to be covered by the Act when they negotiated it. In *Spruell v. Blythe, supra,* the Court of Appeals held that the parties could not waive certain provisions of the Act, 215 Md. at 120–21, 137 A.2d 183; *but cf. Russ v. Barnes, supra,* 23 Md.App. at 699–700, 329 A.2d 767. It may well be that parties cannot

We turn now to appellants' remaining "five payments" contention. It is that the payments they were to make under the $28,000 note they were to give concurrently with the $215,000 cash payments, were payments of the purchase price. They are correct in asserting that more than five payments were to be made under the note. But they are wrong in concluding that this fact helps their cause.

If the contract of sale had unequivocally called for settlement and transfer of title on or before October 6, 1983, the date for payment of the $215,000 and delivery of the note, the answer would be obvious. As of that date, the contract would no longer be an "executory agreement" for the sale of an interest in property, but an executed one. As of that date, appellees, as vendors, would no longer retain title "as security for the purchaser's obligation." Payments made after that date would not, therefore, be payments made against the purchase price of a land installment contract. The difficulty in this case is that the contract is far from clear as to what would happen "on or before October 6, 1983." It is conceivable that the parties did not intend title to pass then but only after the note had been fully paid. Indeed, at oral argument, both sides conceded that a specific settlement date could not be ascertained from the face of the agreement.

At trial both Dr. Sidhu and Dr. Shigo testified that October 6 was to be the settlement date. It seems clear that both contemplated that title would pass then. This is particularly apparent from the testimony of Dr. Sidhu who said that he had arranged for a settlement date of August 30 ("on or before October 6") and that he had obtained financing, by way of a mortgage on the property—something he could not accomplish without acquiring title. Despite the integration clause in the contract, the instrument's

---

"intend" themselves out of a remedial statute which would apply but for that intent. Since, however, we do not base our holding that the Act is inapplicable on any intention of the parties in that regard, it is immaterial that the chancellor admitted evidence to that effect.

ambiguity as to settlement date rendered this parol evidence admissible. *See Shoreham v. Randolph Hills,* 248 Md. 267, 272, 235 A.2d 735 (1967). In light of this evidence in the record, we are unable to say that Judge Heise was clearly erroneous in finding that "the parties intended the agreement to reflect a sale of property with settlement to occur in 24 months" (*i.e.* on or before October 6, 1983). Thus, the contract, as construed, provided for title to pass concurrently with payment of the $215,000 and the delivery of the $28,000 note. As a consequence, payments under the note could not be payments of the purchase price while the seller held title as security. Payments on the note, therefore, cannot qualify as payments of the purchase price within the § 10–101(b) definition.

JUDGMENT AFFIRMED. APPELLANTS TO PAY THE COSTS.