Joshua N. BEDELL, Appellant,

v.

INVER HOUSING, INC., Appellee.

No. 84–1129.

District of Columbia Court of Appeals.

Argued Jan. 8, 1986.

Decided March 18, 1986.

Raymond B. Thompson, Washington, D.C., for appellant.

Eric T. Shane, with whom Rena Schild and Kenneth J. Loewinger, Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, BELSON, Associate Judge, and REILLY, Senior Judge.

PRYOR, Chief Judge:

In this action by appellee Inver Housing, Inc. for non-payment of rent on commercial and residential premises, appellant Joshua N. Bedell counterclaimed, alleging housing code violations and resulting "great business losses." After a bench trial, the trial court awarded appellant recovery of $1,860. After entry of judgment, appellant

moved for a new trial. This motion was denied.

On appeal, appellant claims that the trial judge erred in calculating compensatory damages, refusing to award an abatement of rent for the commercial premises, not awarding punitive damages, neglecting to make a finding as to the security deposit and rent for January 1979, and denying the motion for a new trial. We find these claims, with the exception of that relating to the security deposit and rent for January 1979, to be without merit. Thus, we affirm in part and remand with instructions to the trial court for further action consistent with this opinion.

**I**

Appellant Joshua N. Bedell entered into a lease with appellee Inver Housing, Inc. to rent commercial space located at 317 Massachusetts Avenue, N.W. Appellant rented the property for use as a gallery displaying works of African art. Appellant claimed that, prior to moving into the property, he proffered a check in the amount of $450 as a security deposit, and a second check in the amount of $450 for January rent. Further, appellant asserted that, due to delay in repair of the property, he was unable to begin occupancy until February 1979. Several months after he occupied the gallery, appellant moved into a residential apartment located on the second floor of the property. At the time he moved into the apartment, appellant's rent for the entire premises was increased from $450 to $715 per month.

Appellee brought suit in this case for non-payment of rent by appellant for the months December 1981 through April 1982. At trial, appellee presented testimony that appellant had tendered no rent for the months February through April 1982, and that checks for December 1981 and January 1982 had been returned for insufficient funds.[1]

---

1. At trial, evidence was presented that appellee had received judgment against appellant in

Landlord and Tenant Court for $2,900, representing rent owed for January 1982 through

Appellant counter-claimed, alleging numerous "housing code violations" throughout his tenancy. Appellant claimed that "because of the severity of the housing code violations, [he] experienced great business losses, and his residence became uninhabitable."

In support of his claim, appellant presented testimony concerning alleged housing code violations. Evidence was introduced concerning leaks in the roof, and problems with heat throughout the period of tenancy. Appellant also introduced, as an exhibit, an addendum to his lease in which appellee agreed to make certain improvements to the property. Among the improvements listed in the addendum was installation and repair of a gas heating unit. Appellant testified that the heating unit was never installed satisfactorily, and that as a result, heat in the apartment and gallery was inadequate.

With regard to damages, appellant claimed that the lack of heat rendered the apartment uninhabitable during the colder months of the year. Appellant also claimed that the absence of heat in the gallery caused lost profits and increased utility bills. He also testified that at one point, pipes in the gallery froze due to the lack of heat, resulting in flooding of the gallery and extensive damage to the works of art on display. In support of this claim, appellant introduced into evidence a list of art objects sustaining damage. This list, prepared at the time of the flood, assigned monetary values to the damaged items totaling $78,500. Lastly, appellant sought abatement of a portion of the rent on the gallery, and return of his security deposit, and a rent payment for January 1979.

In his oral ruling following trial, the trial judge considered appellant's claims relating to the apartment and gallery separately. As to the apartment, he found that the lack of heat rendered the premises uninhabitable during five months of appellant's tenancy. Based on this finding, the judge deter-

mined that appellant was entitled to a rent abatement totaling $1,125. However, the court also found that appellant had not paid rent for December 1981. Thus, the judge deducted $265 from the rent abatement in awarding recovery of $860 for rent paid on the apartment.

As to the commercial premises, the judge found appellee liable for damages resulting from breach of its contract to install a gas furnace. In assessing damages, the court found appellee liable for losses resulting from the flood of the gallery due to the frozen pipes. Finding the list of damaged items proffered by appellant to be "barely conclusory," it awarded damages of $1,000. Further, the trial judge denied appellant recovery for lost profits and increased utility bills, and found no basis for awarding an abatement of rent for the gallery. The court made no finding as to the security deposit or the rent allegedly paid by appellant for January 1979.

After judgment, appellant moved for a new trial. In support of the motion, appellant stated that he sought to proffer evidence documenting the damage to his property due to the flood of the gallery, as well as a canceled check establishing that rent on the property had been paid for December 1981. Appellant also asserted that a new trial was warranted because the trial judge had made no finding concerning the $450 security deposit and payment of rent for January 1979.

By written order entered July 16, 1984, the court denied appellant's motion for a new trial. This appeal followed.

## II

Appellant's primary claim on appeal involves a challenge to the trial court's calculation of certain elements of damage in this case. In particular, appellant takes exception to three aspects of the damage award. First, appellant argues that in awarding $1,000 for damage to objects of art result-

---

April 1982. The trial judge found this judgment to be res judicata, and thus limited appellee's

potential recovery in this case to money owed by appellant for December 1981.

ing from the flood of his gallery, the trial judge failed to make a "just and reasonable estimate" of his losses. Next, appellant contends that there was error in failing to award damages for increased utility bills and lost profits. Finally, appellant asserts that in awarding him a five-month rent abatement on the apartment, the court erred in subtracting $265 for rent not paid for December 1981. We find these claims of error to be without merit.

We are obliged to treat findings of fact made by the trial court sitting without a jury "as presumptively correct unless they are clearly erroneous or unsupported by the record." *Edmund J. Flynn Co. v. LaVay*, 431 A.2d 543, 546 (D.C.1981); *see also* D.C.Code § 17–305(a) (1981); *Blanken & Blanken Investments, Inc. v. Keg, Inc.*, 383 A.2d 1076, 1078 n. 4 (D.C.1978); *Cunningham v. Cunningham*, 154 A.2d 124, 125 (D.C.1959). In reviewing findings of fact, the question before this court "is not whether [we] would have made the findings the trial court did, but whether 'on the entire evidence [we are] left with the definite and firm conviction that a mistake has been committed.' " *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969) (citations omitted).

It is established "that a plaintiff is not required to prove the amount of his damages precisely; however the fact of damage and a reasonable estimate must be established." *W.G. Cornell Co. v. Ceramic Coating Co.*, 200 U.S.App.D.C. 126, 129, 626 F.2d 990, 993 (1980); *see also Cahn v. Antioch University*, 482 A.2d 120, 130 (D.C.1984). "While damages are not required to be proven with mathematical certainty, there must be some reasonable basis on which to estimate damages." *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982); *see also Manes v. Dowling*, 375 A.2d 221, 224 (D.C.1977) (plaintiff must prove amount of damages "with reasonable certainty"). Consequently, "where a plaintiff proves a breach of contractual duty he is entitled to damages; however,

when he offers no proof of actual damages or the proof is vague and speculative, he is entitled to no more than nominal damages." *Roth v. Speck*, 126 A.2d 153, 155 (D.C.1956) (footnote omitted).

■ In this case, the trial judge's findings of fact on the issue of damages reflect a careful weighing of the evidence presented at trial. On the issue of the amount to be awarded appellant for losses to objects of art in his gallery, the sole evidence before the trial judge was a list prepared by appellant of damaged items and their undocumented dollar values. As the judge recognized, however, this list provided an inadequate basis for developing a reasonable estimate of appellant's losses:

> [E]ven as a list of damaged items [appellant's exhibit] is barely conclusory. There is no explanation as to what each item actually cost, whether retail or wholesale prices, whether they were paid for by someone, whether there are any other bills to substantiate it. The short of it is, the Court has not been furnished with information sufficient to conclude what the amount of damages are except to a very limited extent.

Based on the limited factual record developed at trial, we find no basis for concluding that the court's award of $1,000 for damages to art objects in appellant's gallery was "clearly erroneous."

■ Appellant's challenge to the failure to award damages for increased utility bills and lost profits is similarly unavailing. Appellant presented testimony concerning increased utility bills resulting from the installation of electric heaters, as well as several gas and electric bills for periods of consumption after electric heaters were installed. Viewing this evidence, the court noted in its findings that "no credible evidence" had been proffered of utility costs "before it was necessary to put in space heaters." For this reason, the court was unable to make a comparative assessment of heating costs before and after space heaters were installed and thus lacked a

factual basis upon which to make an award for increased utility costs.

▪ As to lost profits, the sole evidence before the court was appellant's testimony that he had lost "roughly around about twenty or thirty thousand dollars" in business income due to problems with repair of the gallery. Based on this vague, unsubstantiated statement, the trial court found

> [T]here is no reasonable evidence before the court as to what the level of [appellant's] business was. There are no indications of his income from the property, and the Court cannot tell short of making a wild guess just what income he would have earned during the time the store would have been closed because of the burst pipe....

Given the sparse factual record presented, we find no basis for the finder of fact to make a reasonable estimate of appellant's losses. Consequently, we find no error in the court's denial of an award for increased utility bills and lost profits.

Finally, appellant objects to the court's calculation of the rent abatement on the apartment. In particular, appellant challenges the court's deduction from the amount awarded of $265 for rent not paid by appellant for December 1981.

Again, the record is scanty. Appellee testified that, while appellant had tendered a check for December rent, the check had been returned by the bank for insufficient funds. Appellant, in his testimony, challenged this characterization and claimed that the problem was due to appellee's confusion as to when the check could be deposited. Given this conflicting testimony, and the absence of documentary support on either side of the issue, we reject appellant's assertion that the trial court's finding that rent had not been paid for December 1981 was clearly erroneous.

## III

Appellant also claims that the court erred in not awarding him an abatement of rent on the gallery, and denying recovery of punitive damages. These claims merit only brief discussion.

Appellant's claim that the trial court erred in not awarding an abatement of rent for the gallery runs counter to basic concepts in this jurisdiction. It is established that in the context of a commercial lease, "monies voluntarily paid with full knowledge of the surrounding facts and circumstances, though paid under a mistaken view of the law, cannot be recovered." *Voulgaris v. Press,* 116 A.2d 691, 692 (D.C. 1955); *see also Lamborn v. County Commissioners,* 7 Otto 181, 185, 97 U.S. 181, 185, 24 L.Ed. 926 (1877). An exception to this rule is recognized where the payments are made under duress. *Voulgaris v. Press, supra,* 116 A.2d at 692; *Thompson v. Deal,* 67 App.D.C. 327, 333, 92 F.2d 478, 484 (1937).

▪ In this case, the testimony established, and the trial judge so ruled, that appellant made his rental payments on the gallery voluntarily and in the absence of the type of duress constituting an exception to the general rule stated in *Voulgaris, supra.* Given that the rental payments were voluntary, the court did not err in denying appellant recovery for an abatement of rent on the gallery.

▪ Appellant's claim that the court erred in not awarding punitive damages is also without legal foundation. Punitive damages will not lie for breach of contract, even if it is proven that the breach is willful, wanton, or malicious. *Sere v. Group Hospitalization, Inc.,* 443 A.2d 33, 37 (D.C.), *cert. denied,* 459 U.S. 912, 103 S.Ct. 221, 74 L.Ed.2d 176 (1982); *see also Minick v. Associates Investment Co.,* 71 App.D.C. 367, 368, 110 F.2d 267, 268 (1940). In this jurisdiction, a recovery of punitive damages can only be had where the alleged breach of contract "merges with, and assumes the character of, a willful tort." *Brown v. Coates,* 102 U.S.App.D.C. 300, 303, 253 F.2d 36, 39 (1958); *McIntosh v. Aetna Life Insurance Co.,* 268 A.2d 518, 521 (D.C.1970). Having failed to establish that appellee's conduct in this case consti-

tuted a willful tort, appellant cannot prevail on his claim that the denial of punitive damages was improper.

## IV

Appellant claims that the trial court abused its discretion in denying his motion for a new trial. We disagree.

Following entry of judgment in this case, appellant moved, under Super.Ct.Civ.R. 59, for a new trial. In support of the motion, appellant first asserted that due to court imposed time constraints, and a "false" impression created by the trial judge, he had mistakenly thought that "there was no need to give extensive testimony" concerning damage to the works of art in the gallery. Appellant argued that because the trial judge found his proffer of damages inadequate, and on this basis limited his recovery, "[i]n the interest of justice, it is necessary that the judgment be opened in order to allow [appellant] to present documentary evidence to substantiate the full value of the merchandise lost. . . ." Second, appellant requested that the judgment be opened so that he could submit proof, in the form of a canceled check, that he had indeed paid rent for December 1981.[2] By written order dated July 16, 1984, the trial judge denied appellant's motion for a new trial.

"In this jurisdiction it is settled beyond question that the granting or refusal of a new trial is not subject to reversal, save when a clear abuse of discretion is shown." *Hoover v. Babcock,* 53 A.2d 591 (D.C.1947) (footnote omitted); *see also Queen v. D.C. Transit System, Inc.,* 364 A.2d 145, 148 (D.C.1976). When the motion for a new trial is based on a claim of newly discovered evidence, the movant is required "to rebut the presumption that there has been a lack of diligence." *United States v. Bransen,* 142 F.2d 232, 235 (9th Cir.1944). Based on this requirement, it has been held that "[s]ubsequent discovery of the importance of evidence which was in the possession of the applicant for a new trial, at the time of trial, does not entitle him to a new trial upon the ground of newly discovered evidence." *Id.*

In this instance, the evidence which appellant seeks to proffer at a new trial, could have, with the exercise of minimal diligence, been available to him at the time of the initial trial. Moreover, appellant's assertion that he was somehow misled, or otherwise precluded, from offering documentary proof of his damages is without foundation in the record. Appellant's failure to prove his damages cannot now be attributed to the manner in which the trial was conducted, nor corrected through motion for a new trial.[3] Thus, we find no abuse of discretion in the denial of appellant's motion for a new trial.

## V

Finally, appellant asserts that the trial court erred in not making a finding as to the security deposit and rent payment for January 1979. Our review of the record establishes that these monies were put in issue in this case, but that the judge, in his oral ruling, made no findings as to their disposition. Under Super.Ct.Civ.R. 52(a), the trial court is required to "state

---

**2.** Appellant also requested a new trial because of the trial court's failure to make a finding as to the security deposit and rent for January 1979. We discuss this claim in Section V, *infra.*

**3.** Moreover, we note that appellant is not entitled to a new trial because the evidence at the initial trial was less than complete. We rejected such a contention in *Murville v. Murville,* 433 A.2d 1106, 1110–11 (D.C.1981), where we stated: There is some merit to the contention the evidence at trial was less than complete, and

that issues were thereby confused. However, this is the fault of both parties, and so long as the trial judge considered the evidence that was presented adequate information upon which to render a decision, we cannot hold it was an abuse to not order a new trial. Appellant would more than likely be able to marshal more proof in another evidentiary proceeding, but that alone does not entitle her to a second chance.

findings of fact specially and state separately its conclusions of law in every action tried upon the facts without a jury...." *See also Thomas v. Thomas,* 477 A.2d 728, 729 (D.C.1984) (per curiam) (case remanded because of trial court's failure to provide findings sufficient to facilitate appellate review). Because no such findings were made on the security deposit and rent payment for January 1979, we remand this aspect of the case for further action by the trial court.

*Affirmed in part and remanded in part.*