**COLUMBUS PROPERTIES, INC., Appellant,**

v.

**Marjorie A. O'CONNELL, Appellee.**

No. 93–CV–882.

District of Columbia Court of Appeals.

Argued April 19, 1994.
Decided July 7, 1994.

Roger D. Luchs, Washington, DC, for appellant.

Charles S. Rand, Rockville, MD, with whom James D. Fife, Washington, DC, was on the brief, for appellee.

Before FERREN * and TERRY, Associate Judges, and GALLAGHER, Senior Judge.

GALLAGHER, Senior Judge:

Appellant, lessor of a commercial office building, appeals from the jury verdict and the trial court's denial of its motion for judgment notwithstanding the verdict in favor of appellee, a lessee who brought a breach of contract action against appellant due to defi-

---

* *Judge* FERREN was *Acting Chief Judge* of this court at the time of argument. His status as an *Associate Judge* resumed on June 14, 1994.

ciencies in the leased premises. Appellant contends that (1) expert testimony was required in order to establish the value of appellee's damages, and that (2) appellee failed to introduce evidence with respect to the valuation of her damages. Finding no error, we affirm.

## I.

In April of 1983, appellee Marjorie A. O'Connell, an attorney in search of office space for her practice, entered into a ten-year commercial lease agreement with 1710 Rhode Island Avenue Associates, a limited partnership. Pursuant to this agreement, O'Connell leased a full-floor suite on the sixth floor of an office building located at 1710 Rhode Island Avenue, Northwest, in the District of Columbia. In the following year, O'Connell expanded her law offices and entered into a second lease for a full-floor suite on the seventh floor of the same building. The term of the second lease was for approximately eight and one-half years, commencing on December 1, 1984. Both leases were on identical forms in which O'Connell agreed to pay a base rent[1] as well as a proportionate share of any increases in the operating expenses for the building during the lease terms. In 1989, appellant Columbus Properties, Inc. ("Columbus Properties") purchased the office building from 1710 Rhode Island Avenue Associates. Shortly thereafter, O'Connell made numerous complaints to Columbus Properties through its managing agent[2] concerning the building's plumbing problems and the general decline of the building services. As a result of these deteriorating conditions and services, O'Connell filed an action alleging that Columbus Properties breached the lease agreement as of April 1989.

During her testimony at trial, O'Connell described the defective conditions in the common areas of the building and the deficient building services which had ultimately led her to vacate the premises in November of 1992. O'Connell testified that these problems included water flooding in the restrooms due to broken commodes,[3] broken amenities in the restrooms,[4] burned out light bulbs in the restrooms, elevator breakdowns, security door malfunctions, and a defective central heating and air conditioning system. O'Connell further recalled that on December 31, 1991, the computers in her sixth-floor office were short-circuited as a result of water flooding from the seventh and eighth floors.[5] In addition to these problems, O'Connell testified that her offices were not provided daily cleaning service, as required under the lease, and that an odious stench had permeated the hallways as a result of the flooding in the restrooms. Based on her own opinion, O'Connell testified that her ability to use her office had decreased between thirty-three and fifty percent due to these defective conditions in the building.

At the end of the evidence, Columbus Properties moved for a directed verdict on grounds that O'Connell neither offered expert testimony as to the valuation of her damages nor any evidence from which a jury could properly assess her claim for damages. The trial court denied the motion for directed verdict and submitted the case to the jury. The jury found in favor of O'Connell and awarded her an abatement in rent of $1,875.00 per month for the sixth-floor suite, and an abatement of $1,687.00 per month for the seventh-floor suite during the period of January 1992 through October 1992. The jury did not award O'Connell any damages for the period of April 1989 through Decem-

1. The leases also provided that the lessee would be responsible for a proportionate share of any increase in annual real estate taxes and assessments. In addition, the lessee agreed to pay for adjustments in base rents which were to be based upon increases in the consumer price index.

2. O'Connell testified that her office initially contacted Shannon & Luchs, the managing agent of the subject property.

3. O'Connell indicated that in addition to the water damage, the flooding also created unsanitary conditions as human excrement would leak onto the bathroom floors.

4. O'Connell testified that the towel rack in the sixth-floor ladies' room had fallen off the wall and that the soap dispenser was broken as well.

5. O'Connell stated that it took approximately two days for her office to return to its normal operation.

ber 1991. Relying upon the same grounds as in its motion for a directed verdict, Columbus Properties filed a motion for judgment notwithstanding the verdict. The trial court denied this motion. In its order, the trial court ruled that O'Connell was not obligated to offer expert testimony to establish her damages. The trial court also noted that the deficiencies in the instant case were of the same type that ordinary people experience in residential leases and that the jury's award was supported by O'Connell's testimony. Columbus Properties filed a timely appeal.

## II.

■ We first address whether O'Connell was required to provide expert testimony on the valuation of her damages. It is well accepted in this jurisdiction that "[e]xpert testimony is required ... when the subject matter at issue is 'so distinctly related to some science, profession, business or occupation as to be beyond the ken of the average layman.'" *Washington Metro. Area Transit Auth. v. Davis*, 606 A.2d 165, 170 (D.C.1992) (quoting *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C.1978)). *See, e.g., Garvey v. O'Donoghue*, 530 A.2d 1141, 1146 (D.C. 1987); *Payne v. Soft Sheen Products, Inc.*, 486 A.2d 712, 727 n. 17 (D.C.1985); *District of Columbia v. White*, 442 A.2d 159, 164 (D.C.1982); *District of Columbia v. Barriteau*, 399 A.2d 563, 568–69 (D.C.1979). In this case, O'Connell testified that pursuant to the lease agreement, Columbus Properties was responsible for the building's utilities, maintenance and cleaning services. She further testified that despite these lease obligations, there was a continuing problem with the elevators, the plumbing in the restrooms, and the lighting in the restrooms. Based upon these and other deficiencies in the building, O'Connell opined that her use of the leased office space diminished between thirty-three and fifty percent.

Under these circumstances, the subject matter of O'Connell's claim was not such that it can be said to be beyond the ken of the average juror. *Washington Metro. Area Transit Auth., supra,* 606 A.2d at 170. "The causes of action that *require* expert testimony are 'rare.'" *Payne, supra,* 486 A.2d at 727 n. 17 (citing *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962) (emphasis in original)); *see, e.g., Garvey, supra,* 530 A.2d at 1146. *See also Barriteau, supra,* 399 A.2d at 568 ("[n]ot every element of damages warrants the use of expert testimony, and the decision to admit expert testimony lies within the sound discretion of the trial court"); *Gerber v. Columbia Palace Corp.*, 183 A.2d 398, 399–400 (D.C.1962); *cf. Hartford Accident & Indem. Co. v. Dikomey Mfg. Jewelers, Inc.*, 409 A.2d 1076, 1079 (D.C.1979) ("Generally, '[m]arket value is not a question of science and skill upon which experts alone may give an opinion.'") (quoting ROGERS, THE LAW OF EXPERT TESTIMONY § 26, at 34 (3d ed. 1941)). While expert testimony may have been helpful to the jury in its assessment of O'Connell's claim for damages, it was not necessary for O'Connell to introduce such testimony in order to establish her claim.[6]

## III.

■ Turning next to Columbus Properties' assertion that O'Connell failed to provide any evidence on the valuation of her damages, it is established that "'a plaintiff is not required to prove the amount of his [or her] damages precisely; however the fact of damage and a reasonable estimate must be established.'" *Bedell v. Inver Housing, Inc.*, 506 A.2d 202, 205 (D.C.1986) (quoting *W.G. Cornell Co. v. Ceramic Coating Co.*, 200 U.S.App.D.C. 126, 129, 626 F.2d 990, 993 (1980)). So long as a plaintiff provides "some reasonable basis on which to estimate damages," *Bedell, supra,* 506 A.2d at 205 (quoting *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C.1982)), the jury's award of damages will not be disturbed on appeal. If

---

6. We consider that Columbus Properties' reliance on *Garcia v. Llerena*, 599 A.2d 1138 (D.C. 1991), and *Rubinstein v. Lichtenstein*, 137 A.2d 219 (D.C.1957), to support its contention that O'Connell was required to introduce expert testimony on the valuation of her damages is misplaced. Although both cases involved commercial leases, neither case addressed the present issue of whether a commercial lessee is required to provide expert testimony in order to establish damages of the nature asserted here.

a landlord has failed to meet his or her obligations under a lease, a tenant is entitled to damages, which may include the fair market value of the lease. *See* Restatement (Second) of Property, Landlord & Tenant § 10.2 (1977) ("Restatement"). The fair market value "may be ascertained by calculating the difference between the reasonable rental value of the property for the remainder of the term ... and the agreed rent." *See Garcia, supra* note 6, 599 A.2d at 1143 (citing Restatement § 10.2, comment b & illustration 1).

■ ■ O'Connell testified that the use of her office space had diminished between thirty-three to fifty percent due to the office building's deficiencies. We regard O'Connell's testimony on the diminishment of use of her office as admissible lay opinion testimony on the value of her damages. *See Carter v. United States,* 614 A.2d 913, 919 (D.C.1992) (" 'Modern rules of evidence permit non-expert witnesses to express opinions as long as those opinions are based on the witness' own observation of events and are helpful to the jury' ") (quoting *Fateh v. Rich,* 481 A.2d 464, 470 (D.C.1984)); *see also S.S. v. D.M.,* 597 A.2d 870, 879 n. 29 (D.C.1991). The jury was, therefore, allowed to either credit or disregard O'Connell's opinion as to her calculation of damages. Moreover, the fact that O'Connell's testimony "embrace[d] an ultimate issue to be decided by the trier of fact" is of no moment. *Fateh, supra,* 481 A.2d at 470. Under these circumstances, we conclude that O'Connell's assessment of her damages sufficiently guided the jury in its determination that she was entitled to abatement in her rent of the amounts reached.

■ Nevertheless, we do not share the trial court's opinion that where the breaches of a commercial lease are of the same nature as breaches in a residential lease, a jury may rely upon its own experience to calculate damages by merely viewing the evidence of the commercial lease violations. As we stated in *Interstate Restaurants, Inc. v. Halsa Corp.,* 309 A.2d 108, 110 (D.C.1973) (per curiam):

> *Javins* [7] involved the application of the Housing Regulations to urban dwelling units. The rationale of that decision does not, in our view, extend to a commercial lease such as here involved, even assuming that the breaches alleged were of the nature of those fundamentally underlying *Javins.*

*See also E.P. Hinkel & Co. v. Manhattan Co.,* 165 U.S.App.D.C. 140, 145, 506 F.2d 201, 206 (1974) (lessor's duty to repair by way of implied warranty is restricted to lessors of residential property); *Rishty v. R & S Properties, Inc.,* 101 A.2d 254 (D.C.1953) (principles of public policy which might affect residential leases did not apply to a commercial lease); *cf. Ontell v. Capitol Hill E.W. Ltd.,* 527 A.2d 1292, 1295 n. 4 (D.C.1987) ("[t]he legal distinction between commercial and residential tenancies is well grounded"); *Espenschied v. Mallick,* 633 A.2d 388, 394 n. 15 (D.C.1993).

Although we do not accept the trial judge's view in equating commercial leases with leases of residential property, we conclude that the outcome was correct. *See generally Sterling Mirror of Maryland, Inc. v. Gordon,* 619 A.2d 64, 67 n. 5 (D.C.1993) (judgment must be affirmed on appeal if the result is correct, despite the trial court's reliance upon a wrongful ground); *Weaver v. Grafio,* 595 A.2d 983, 987 n. 2 (D.C.1991); *Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982).

Viewing the evidence in the light most favorable to O'Connell, as we must,[8] we concur with the trial court's conclusion that there was sufficient evidence in the record to support the jury's verdict and therefore, the motion for judgment notwithstanding the

---

7. *Javins v. First Nat'l Realty Corp.,* 138 U.S.App. D.C. 369, 428 F.2d 1071, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970).

8. *See Arthur Young & Co. v. Sutherland,* 631 A.2d 354, 363 (D.C.1993) (unless it can be said that no reasonable juror, viewing the evidence in the light most favorable to the prevailing party, could reach a verdict in favor of that party, a motion for judgment notwithstanding the verdict must be denied); *Jefferson v. Ourisman Chevrolet Co.,* 615 A.2d 582, 584 (D.C.1992); *Finkelstein v. District of Columbia,* 593 A.2d 591, 594 (D.C. 1991) (en banc); *Marcel Hair Goods Corp. v. Nat'l Sav. & Trust Co.,* 410 A.2d 1, 5 (D.C.1979).

verdict was properly denied. Accordingly, the judgment of the trial court is

*Affirmed.*