Richard B. STEINKAMP,
et al., Appellants,

v.

Marjorie HODSON, Appellee.

No. 96–CV–1372.

District of Columbia Court of Appeals.

Argued Feb. 17, 1998.
Decided Sept. 3, 1998.

Richard B. Steinkamp, pro se, and on behalf of appellant Lenora Steinkamp.

Richard B. Nettler, Washington, DC, for appellee.

Before STEADMAN and RUIZ, Associate Judges, and PRYOR, Senior Judge.

RUIZ, Associate Judge:

Richard B. and Lenora Steinkamp contend that the trial court erred in issuing an order granting summary judgment in favor of their neighbor, Marjorie Hodson, on her complaint for a declaratory judgment and injunctive relief construing and enforcing an easement over a driveway area to prohibit the Steinkamps from parking their car in the driveway or using the driveway for any purpose other than ingress or egress, and on the Steinkamps' counterclaim for tortious interference and property damage. The Steinkamps' subsequent motion for reconsideration and clarification of the summary judgment was denied by the trial court.

The Steinkamps' various grounds of alleged error were narrowed at oral argument, where they stated that they sought: (1) an interpretation by this court of the easement and the trial court's order with respect to the Steinkamps' right to park in front of their home; (2) an interpretation of the easement and clarification of the order on the meaning of the only use of the easement permitted to the Steinkamps—ingress and egress; (3) that this court lift the injunction prohibiting the Steinkamps from "using the driveway for any purpose other than ingress and egress ... without [Hodson's] express, prior consent"; and (4) reversal of the trial court's grant of summary judgment to Hodson on the Steinkamps' counterclaim. We affirm the trial court's order and injunction as to the easement, which we interpret as permitting the Steinkamps to use the driveway and their own parking pad as we set out in this opinion. As to the Steinkamps' counterclaim, however, we conclude that because material facts remain in dispute regarding damage to a wall on the Steinkamps' property and that a jury could find in favor of the Steinkamps on that particular allegation, the trial court erred in granting summary judgment in favor of Hodson. We therefore reverse and remand on that portion of the counterclaim.

## I.

The Steinkamps, Hodson, and a third family, the Xenakises, are the current owners of lots just off the 2900 block of Garfield Street, North West, which share a common driveway area leading to a parking pad and entrance to each home. The three lots, 128, owned by the Steinkamps, 129, owned by Hodson, and 130, owned by the Xenakises, face on three sides a rectangular area, roughly one hundred feet long by twenty-four feet wide, which sharply narrows on the fourth side exiting onto Garfield Street. This area, for the most part paved, is derived from Hodson's lot 129 for 20 feet of its width; two feet of the width are derived on each side of the rectangular area from lots 128 and 130, owned, respectively, by the Steinkamps and the Xenakises. The Steinkamps' home on lot

128 is situated so that the parking area in front of their home is perpendicular to the common rectangular area.

The area shared by the three lots is the subject of an easement agreement entered into by the investment corporations which built and owned the lots, and the District of Columbia government. The easement reads, in pertinent part,

> Whereas, the parties of the first part [the investment corporations] are desirous of creating a non-exclusive perpetual easement for the purposes of ingress and egress to each of the aforesaid lots ... [and]

> Whereas, areas on the aforesaid described lots which are proposed for use as off-street parking areas are more easily and conveniently accessible through the easement sought herein, ... the parties hereto mutually agree as follows:

> 1. Parties ... hereby covenant and agree for themselves, their successors and assigns ... that each of them will ... constitute and create a perpetual easement and right-of-way for the passing and repassing of motor vehicles in, through, and across the following described parts of lots 130, 129, and 128 ... for the mutual benefit of all of said lots so that each of the above lots shall always be accessible from Garfield Street, N.W. ...

> 3. The said parties ... will at all times keep unobstructed the said easement and right-of-way within the limits of each of the said lots and will keep up and maintain the same in a condition suitable for the purposes for which it is herein constituted and created, cost to be shared equally by the three (3) lot owners whose property abuts this easement or is served by this easement.

In their complaint, the Hodsons alleged that the Steinkamps have

> continuously ... parked on a portion of the driveway of Lot 129, said use being hostile to the Hodson's ownership of Lot 129 and an obstruction to the Hodsons' access to their own property and have used the driveway portion of Lot 129 for other personal purposes.

The Hodsons requested from the trial court, *inter alia*, the following relief:

> an Order [1] declaring that the [Steinkamps] have no ownership interest in any portion of the driveway on Lot 129 nor any right to use said driveway for ... the parking of motor vehicles, except for ingress and egress over and across the easement premises[; and 2] enjoining [the Steinkamps] from using, without the express permission of the [Hodsons], the driveway portion of Lot 129 for any purpose other than for access to and from their garage and residence on Lot 128....

The Hodsons subsequently amended their complaint to add the Xenakises, owners of lot 130, "solely for purposes of including all necessary parties," emphasizing that they did not claim that the Xenakises acted in violation of the easement.

The Steinkamps filed an answer both denying and asserting affirmative defenses to all of the Hodsons' claims, along with a counterclaim alleging that the Hodsons engaged in "continuous, tortious interference with the [Steinkamp's] use and enjoyment of their residence," as well as property damage to the Steinkamps' property:

> [C]ontinuously until the instant litigation was filed ... the [Hodsons] have called, and had other persons call in their behalf, to complain about the ingress and egress of the [Steinkamps], their family members and guests, about reasonable and ordinary noise, about furniture tastefully placed on the porch in front of the [Steinkamps'] residence, about the fact that they sit on their porch, about the ingress and egress of the children of the [Steinkamps], walking on their way to school, about guests who pull in the Easement area to pick up and discharge passengers, and other, similar matters of little consequence....

> In addition, in or about August, 1994, ... Ken Hodson, negligently backed his vehicle into the wall on the [Steinkamps'] property, damaging the wall, and admitted such damage.... The wall has been further damaged by the constant flow of rain-and surface-water from the property of the [Hodsons], which water flow has eroded the masonry joints in the stone wall, caus-

ing the stone wall to loosen and fall into disrepair.

The Steinkamps also alleged in subsequent filings that both the Hodsons and the Xenakises, as well as their guests, park in the easement, and that the Xenakises' car is routinely parked in their parking pad in such a way that the car protrudes into the easement.

The trial court granted Hodson's motion for summary judgment on both her amended complaint and the Steinkamps' counterclaim.[1] The trial court determined as a matter of law that

[t]he language of the easement is clear and unambiguous. The Steinkamps' use of the driveway for any purposes other than ingress and egress is therefore precluded. ... [T]he Court is constrained to enforce the easement and enjoin the [Steinkamps] from parking in the driveway, allowing their children to play in the driveway, or any other use that is not directly associated with ingress and egress from their Lot.

The trial court then enjoined the Steinkamps "from using the driveway for any purpose other than ingress and egress as described above, without the express, prior consent of the owner of Lot 129."

## II.

 This court must affirm the grant of summary judgment to Hodson "if we conclude that there was no genuine dispute of material fact and that she was entitled to judgment as a matter of law." *Foundation for the Preservation of Historic Georgetown v. Arnold,* 651 A.2d 794, 796 (D.C.1994).

Since the moving party carries the burden of proving no genuine issue of fact in dispute, the material lodged in support of the motion must be viewed in the light most favorable to the opposing party. If the offered evidence and its inferences would *permit* the factfinder to hold for the nonmoving party under the appropriate burden of proof, the motion for summary judgment should be denied.

*Nader v. de Toledano,* 408 A.2d 31, 42 (D.C. 1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) (quotation and citations omitted). When a motion for summary judgment requires this court to interpret an easement, we must

construe[ ] [that easement] in accordance with the intention of the parties insofar as it can be discerned from the text of the instrument. If [the writing] is unambiguous, the court's role is limited to applying the meaning of the words, but if it is ambiguous, the parties' intention is to be ascertained by examining the document in light of the circumstances surrounding its execution and, as a final resort, by applying rules of construction.

*Foundation for the Preservation of Historic Georgetown, supra,* 651 A.2d at 796 (quotations and citations omitted).

## III.

The trial court's order "enjoin[s] [the Steinkamps] from using the driveway for any purpose other than ingress and egress as described above, without the express, prior consent of the owner of Lot 129...." The trial court's order does not define "ingress and egress," specifying only two activities which fall outside of those terms: "parking in the driveway and allowing [the Steinkamps'] children to play in the driveway." Based upon the language of the easement agreement, our case law, and District of Columbia Municipal Regulations, we affirm the trial court's order, subject to the following clarifications.

The easement at issue binds the owners of the lots in question to maintain "unobstructed the said easement and right-of-way ... for the purposes of [ingress and egress]" between the lots and Garfield Street. In *Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc.,* 86 U.S.App. D.C. 58, 179 F.2d 64 (1949), a case binding on this court, *see M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971), the court considered a similar easement and dispute between neighboring property holders over parking,

---

1. Kenneth J. Hodson, Marjorie Hodson's husband, was a party to the complaint and counterclaim. Mr. Hodson died shortly before Mrs. Hodson filed her motion for summary judgment.

loading and unloading in a driveway covered by the easement. The court explained:

> The use of the easement for purposes of *ingress and egress does not include its use for parking* purposes and an injunction may issue to prevent such a use. However, it is to be said that appellant is *entitled to a reasonable use and enjoyment of the easement for purposes of ingress and egress.* In determining what is a reasonable use, the easement is to be construed in the light of the situation of the property and the surrounding circumstances for the purpose of giving effect to the intention of the parties. The long continued use of the right of way for the purpose of loading and unloading ... may indicate an intention of the parties that the easement might be used for that purpose.

*Penn Bowling,* 86 U.S.App. D.C. at 61, 179 F.2d at 67 (emphasis added).

*Parking on the Parking Pad*

 We agree with the trial court that the unambiguous language of the easement prohibits parking in the easement as outside the right of ingress and egress. *See id.* We note, however, that, by its terms, the order addresses only that part of the easement which is owned by Hodson—the only interpretation consistent with the trial court's statement that "[Hodson] owns the 'servient estate' and the [Steinkamps and Xenakises] share the 'dominant estate.'" So interpreted, the order is responsive to Hodson's amended complaint, which seeks relief regarding a controversy over the "driveway portion of [Hodson's] Lot 129." We therefore conclude that the injunction issued by the trial court refers exclusively to that twenty-foot-wide portion of the easement which is comprised of Hodson's lot 129.

At oral argument, Steinkamp insisted that when his car is parked on his parking pad, its rear bumper protrudes only into that part of the easement comprised of a two-foot swath derived from his own lot—not the twenty feet of the easement which belong to Hodson's lot 129. Steinkamp answered affirma-

tively when asked by the appellate panel whether a clarification that the trial court's order covered only the Hodson's twenty feet would resolve the issue of whether or not parking on his parking pad violates the injunction created by the order. On that same question, while asserting the opposite position that the Steinkamps' parked car in fact protrudes into the twenty feet of the easement contributed by Hodson's lot 129, counsel for Hodson conceded at oral argument that if the bumper of the Steinkamps' parked car did not protrude into that part of the easement comprised of lot 129, but remained in the Steinkamps' lot subject to the easement, that "may be a technical violation of the easement, but it is not the issue that was brought before the court."

In sum, under the trial court's injunction as we have interpreted it to apply only to lot 129, the Steinkamps are under no threat of a finding of contempt under the injunction if their car, when parked, does not intrude into the boundaries of lot 129 owned by Hodson that is part of the easement. We do not, of course, address the actual facts of the situation.

*The Meaning of Ingress and Egress*

 In the context of these residential properties sharing a common driveway, that have no other access to their homes than through that driveway, we conclude as a matter of law that "reasonable use and enjoyment ... for purposes of ingress and egress" includes temporarily detaining a vehicle within that driveway for the purposes of loading and unloading people and parcels. *See id.* We note that the temporary use we have described as within permissible ingress and egress is not considered "parking" under District of Columbia law. *See* 18 DCMR § 9901 (1995) (defining "park or parking" as "the standing of a vehicle, whether occupied or not, *other than temporarily for the purpose of, and while actually engaged in, loading or unloading merchandise or passengers* ") (emphasis added).[2]

2. On appeal, and particularly at oral argument, the parties focussed their arguments on parking and temporary loading and unloading. We therefore do not address that part of the trial court's order that excludes the children's playing on the driveway as a permissible use of the easement.

## IV.

We turn now to the Steinkamps' contention on appeal that the trial court erroneously granted summary judgment to Hodson on the Steinkamps' counterclaim alleging tortious interference and property damage by the Hodsons. The trial court stated the following, and no more, in granting summary judgment on the entire counterclaim:

[Hodson] also seeks summary judgment on the Steinkamps' counterclaim for "tortious interference." In light of the Court's ruling on the ownership and rights to use the easement, and for the reasons set forth in [Hodson's] motion, the Court finds that [Hodson] has done no more than attempt to enforce her ownership rights over the driveway. Construing *each* of the allegations of the counterclaim in the light most favorable to the Steinkamps, they have failed to state any claim upon which relief may be granted. Mrs. Hodson's efforts to enforce her rights do not give rise to a claim for damages against her on the grounds that she is "harassing" [the Steinkamps]. The Court will therefore grant [Hodson's] motion for summary judgment on this claim as well.

(Emphasis added.) Thus, the trial court clearly ruled on the entire counterclaim, but explained its reasoning for only the first allegation, tortious interference.

█ The Steinkamps argue in their appellate brief, with no citations to "authorities, statutes, and parts of the record relied on," as required by D.C.App. R. 28(a)(5), that

[s]ince the claim for tortious interference is intertwined with [Hodson's] case, if this Court reverses the lower court, it could and should reinstate the counterclaim in its entirety.

Although we clarify the meaning of its order, we do not now reverse the trial court—the only standard the Steinkamps have given us to reverse the trial court's grant of summary judgment against their counterclaim for tor-

tious interference. We may assume, without deciding, that

a cause of action ex delicto may be predicated upon an unlawful interference by one person with the enjoyment by another of his private property. A number of jurisdictions have adopted the rule of the Restatement that one is liable in an action for damages for a nontrespassory invasion of another's interest in the private use and enjoyment of land if (a) the other has property rights and privileges with respect to the use or enjoyment interfered with, (b) the invasion is substantial, (c) the defendant's conduct is a legal cause of the invasion, and (d) the invasion is either intentional and unreasonable or unintentional and actionable under general negligence rules.

74 AM.JUR.2D *Torts* § 34 (1974). To the extent that Hodson did have a right to enforce her interests in the easement, the Steinkamps have not made out a *prima facie* case of tortious interference with their own property rights, because even though Hodson's actions were clearly intentional, the Steinkamps have not established that her actions were unreasonable. *See id.*[3]

We next address the Steinkamps' counterclaim that the Hodsons caused damage to the Steinkamps' property to determine whether

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Nader, supra,* 408 A.2d at 41 (quoting Super. Ct. Civ. R. 56(c)).

The record on appeal does not include all of the pleadings filed with the trial court, and references to facts material to the Steinkamps' counterclaims of property damage to their wall and water damage are particularly limited. In their counterclaim, the Steinkamps allege that Mr. Hodson "negligently backed his vehicle into the wall on [the Stein-

---

3. We do not consider that Hodson's alleged calls and complaints about "reasonable and ordinary noise, about furniture tastefully placed on the porch in front of the [Steinkamps'] residence, about the fact that they sit on their porch ... and other similar matters of little consequence," without more, are actionable. Rather, they seem to be the stuff of unpleasant relations with neighbors.

kamps'] property, damaging the wall, and admitted such damage," but "made no effort to repair the damage." The wall, which was constructed by the previous owner of the Steinkamps' lot, is located within that portion of the easement which is carved out of the Steinkamps' property; the Steinkamps contend that the Hodsons "knew of and acquiesced in" that construction.

The Steinkamps clarified in their response to Hodson's renewed motion for summary judgment that

> [the] claim relating to the damage caused by Mr. Hodson, now deceased, backing the car over [the Steinkamps'] wall is equally applicable to [Mrs. Hodson] and, if necessary, against the estate of Mr. Hodson. The claim against [Mrs. Hodson] derives from the fact she got out of the car and guided Mr. Hodson's backing up that caused the damage to the wall.

In a pleading filed in support of her motion for summary judgment, Hodson quotes an interrogatory response by the Steinkamps in which they estimate the cost of repairing the wall at "one thousand dollars to repair." In an affidavit submitted later, with the Steinkamps' motion for reconsideration and clarification, Lenora Steinkamp further affirmed that she personally observed Mrs. Hodson "standing in the easement giving directions" to Mr. Hodson when he ran over the wall, and that the damage "will cost several hundred dollars to repair."

Regarding the water damage, the record is even more sparse. In their counterclaim, the Steinkamps allege that "[t]he wall has been further damaged by the constant flow of rain- and surface-water from the property of the [Hodsons], which water flow has eroded the masonry joints in the stone wall, causing the stone wall to loosen and fall into disrepair." The Steinkamps, who bear the burden of presenting a record on appeal sufficient to demonstrate error by the trial court, see *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982), include only one additional allegation of water damage to any part of their property other than the wall—a bare statement in Lenora Steinkamp's affidavit submitted with the motion for reconsideration and clarification which reads: "Excess water has caused settlement cracks to develop in our porch and foundation."

Mrs. Hodson argued for summary judgment on the counterclaim primarily on the grounds that the Steinkamps only state a claim against the deceased Mr. Hodson, and that they cannot prove damages without an expert witness, which the Steinkamps failed to timely designate.

 On this appellate record, we conclude that summary judgment was improperly granted on the allegation in the counterclaim related to damage to the Steinkamps' wall. Viewing the admittedly limited record in the light most favorable to the Steinkamps, a jury could have found that the Steinkamps met their burden of proof on each element of their negligence claim against the Hodsons. *See Nader, supra,* 408 A.2d at 42. Specifically, the jury could have found by a preponderance of the evidence that both Hodsons breached their duties to direct and drive their car so as to avoid striking the wall, that the impact caused damage to the wall, and that the necessary repairs would cost approximately one thousand dollars. *See Beard v. Goodyear Tire & Rubber Co.,* 587 A.2d 195, 199 (D.C.1991). Contrary to Hodson's contention, the Steinkamps are not required to present expert testimony to establish the value of necessary repairs to their wall, *see Columbus Properties, Inc. v. O'Connell,* 644 A.2d 444, 447 (D.C.1994), nor are they required to document the exact amount of damages, *see id.* (quoting *Bedell v. Inver Housing, Inc.,* 506 A.2d 202, 205 (D.C.1986) ("[A] plaintiff is not required to prove the amount of his [ ] damages precisely; however the fact of damage and a reasonable estimate must be established.")).

There is no estimate of damage in the record on appeal for any harm to the Steinkamps' property allegedly caused by the Hodsons which is unrelated to the wall. Therefore, the Steinkamps have not established the damages element required to survive a motion for summary judgment on their counterclaim for damages to any part of their

property other than the wall.[4] *See Nader, supra*, 408 A.2d at 42. To the extent that the Steinkamps request "an Order requiring that [Hodson] install a storm drain along [her] driveway in a manner which will adequately carry away the rain- and surface-water," the Steinkamps have brought to this court's attention no legal source establishing that the Hodsons have a duty to install such a drain. *See* D.C.App. R. 28(a)(5).

For the foregoing reasons, we affirm the grant of summary judgment to Hodson on her complaint for a declaratory judgment and injunction, clarifying the trial court's order, and affirm the grant of summary judgment to Hodson on the Steinkamps' counterclaim except on the issue of damage to their wall. Because a jury could find in the Steinkamps' favor that the Hodsons negligently drove into and damaged their wall, we reverse and remand on those allegations only.

*So ordered.*

4. We leave it to the trial court to determine whether damage to the wall from water run-off which occurred subsequent to the collision due to the wall's weakened state may also be recoverable as proximately caused by the Hodsons' negligent driving and directing. *See* 2 Stuart M. Speiser, et al., The American Law of Torts § 8:6 (1985).