Estate of James C. PATTERSON, et al., Appellants,

v.

Carl R. SHAREK, et al., Appellees.

No. 05–CV–1523.

District of Columbia Court of Appeals.

Argued March 26, 2007.
Decided May 17, 2007.

Harvey J. Volzer, Alexandria, VA, for appellants.

Brigitte L. Adams for appellee Carl Sharek.

Raighne C. Delaney, Arlington, VA, with whom James Bruce Davis was on the brief, for appellees Ronald and Rebecca Somers.

Before FARRELL, KRAMER and THOMPSON, Associate Judges.

THOMPSON, Associate Judge:

The primary issue before us in this appeal is whether appellants have a right to park in the rear of their property located at 2429 I Street, N.W. They challenge that

portion of the trial court's order rejecting their claim that, through adverse use, their predecessor-in-interest extinguished appellees' right-of-way for automobile ingress and egress across the rearmost 25 feet of the property, leaving appellants free to park on their property as they see fit. We affirm the trial court's ruling that appellants' predecessor-in-interest did not acquire the right to unfettered use of the 25-foot area through adverse possession, but we vacate the court's order enjoining appellants from parking in the rear of their property "except as specifically set forth in the deed of easement." We remand for the trial court to determine whether appellants can park in that area without interfering unreasonably with appellees' right-of-way for ingress and egress (and, if so, within what parameters appellants may park there).

## I. Factual and Procedural Background

The parties' dispute in this case pertains to three adjacent lots—Lot 810 on the west, Lot 809 in the center, and a lot formerly known as Lot 865 [1] on the east— located in the 2400 block of I Street, N.W. Vehicle access to the rear of all three lots may be had only by entering through the rear of Lot 865, the lot owned by appellants. Appellee Carl R. Sharek and his wife are the owners of Lot 809, and they previously owned the other two lots as well. In April, 1958, the Shareks conveyed Lot 810 to Russell A. Eldridge. The deed from the Shareks to Eldridge ("the Eldridge deed") conveyed Lot 810

> TOGETHER WITH with Right of Way for purposes of ingress and egress for automobiles over the North or rear 34 feet by full depth thereof of Lots 809 and 865 in Square 28. Reserving to the grantors a Right of Way for parking

over the North or rear 17 feet by full width thereof of the above described property.

William R. Tiefel acquired Lot 810 in 1972. Sometime after the underlying lawsuit was commenced, Tiefel conveyed the property to Ronald and Rebecca Somers.

In November, 1959, the Shareks conveyed Lot 865 to James C. Patterson, subject to the right-of-way specified in the Eldridge deed. Specifically, the conveyance to Patterson was

> [s]ubject to a right of way established in Deed from Carl R. Sharek and wife to Russell A. Eldridge dated April 21, 1958 ... *for purposes of ingress and egress over the North or rear 34 feet by full width of said land.*

(italics added). The parties' dispute relates to the portion of Lot 865 referred to in the italicized language quoted above: the North or rear 34 feet of Patterson's lot, which was conveyed subject to a right-of-way for ingress and egress ("the North 34-foot ingress/egress area" or "the North 34 feet").

Sometime in the 1970's, Patterson built behind his house on Lot 865 a patio enclosure, surrounded by a brick wall, that extended nine feet into the southern portion of the North 34-foot ingress/egress area, leaving only 25 feet for ingress and egress. In addition, for decades, Patterson parked his vehicle within that remaining 25-foot area, apparently without objection from his neighbors. By sometime in 2002, however, Patterson began to park his car within the 25-foot area in a way that, according to Sharek and Tiefel (then the owners of Lots 809 and 810, respectively) interfered with ingress and egress to and from their lots. Sharek and Tiefel filed suit on August 7, 2003, against Patterson to regain the unob-

---

1. This lot was re-designated as Lot 895 in 1978. For purposes of clarity, we refer to it by its previous designation, which is the one used in the land instruments that we must interpret to resolve this appeal.

structed benefit of their easement.[2] Unbeknownst to them, in 1996 Patterson had transferred Lot 865 to the J.C. Patterson Irrevocable Trust, also known as the Pop! Trust ("the Trust"). Because the complaint named Patterson as the sole defendant and he no longer owned Lot 865, the trial court dismissed appellees' original complaint.

Thereafter, Sharek and Tiefel re-filed their complaint, this time naming as defendants the Estate of James Patterson (Patterson had died in May, 2004); John T. Patterson and Hank Moose, who succeeded James Patterson as Trustees of the Trust; and Richard J. Mudd, legal counsel for the Trustees at the time the first complaint was filed.[3] Count I of the complaint sought a declaratory judgment that defendants were prohibited from "obstructing or inhibiting Plaintiffs' right of ingress and egress across the rear 34 feet of lot [865], including a ban on parking motor vehicles, or placing of any obstruction of any kind, within the rear most 17 feet of said property."[4] Count II sought an injunction to that effect. Count III sought an order directing defendants to remove the portion of the brick patio wall that infringed on the easement. Count IV alleged defendants' tortious interference with plaintiffs' use and enjoyment of their easement. Finally, Count V claimed that the Patterson Estate and Mudd intentionally had misled plaintiffs to believe that Patterson still owned Lot 865, causing plaintiffs to name the

incorrect defendant in their original complaint and to incur expenses arising from that error.

In answering the complaint, the Trustees asserted a claim that Patterson's adverse use, of both the 9–foot patio portion of the North 34 feet of Lot 865 and the remaining, northernmost 25–foot portion of the lot, had extinguished the ingress/egress easement. The parties filed various motions for summary judgment or dismissal. On August 16, 2005, the trial court entered an order granting Mudd's motion to dismiss. The court also ruled that the Trustees had acquired a right to unfettered use of nine feet of the North 34–foot ingress/egress area (*i.e.*, the nine feet within the brick patio wall), accepting their argument that Patterson's open, hostile, continuous and exclusive use of the area as a walled-off patio had extinguished appellees' easement as to the 9–foot–long area. However, the court granted summary judgment in favor of Sharek and Tiefel as to their request that "defendant Trustees be enjoined from parking in the remaining 25 feet of the easement," rejecting the Trustees' adverse possession claim with respect to that portion of the North 34 feet. The court ordered that "defendant Trustees shall be permanently enjoined from parking in the rear 25 feet of their Lot [865], except as specifically set forth in the deed of easement."

**2.** In their pleadings below, appellants contended that the easement is in favor of the owners of Lot 810 only and not in favor of the owners of Lot 809. They have not pressed that point on appeal, however, and so, for purposes of this opinion, we assume without deciding that the easement across Lot 865 serves Lot 809 as well as Lot 810.

**3.** For convenience, and as appropriate to the context, we refer to the Patterson Estate and the Trustees as "defendants," "appellants," or "the Trustees."

**4.** In support of their claim, Sharek and Tiefel submitted affidavits from their tenants stating that "[b]ecause of Mr. Patterson's obstruction, we are usually forced to drive forward and reverse directions numerous times in order to access our rented parking space, thereby creating a hazard. In the presence of snow and ice, the potential would be considerably increased for a collision to occur with Mr. Patterson's parked vehicle."

On or around December 1, 2005, the parties entered into a general Stipulation of Dismissal of all remaining outstanding claims. Finally, on December 16, 2005, the court entered a final order dismissing the case with prejudice.

On December 21, 2005, the Trustees filed their notice of appeal, seeking review of the trial court's orders of August 16, 2005 and December 16, 2005.[5] They contend that the trial court erred in denying their claim of adverse possession of the northern 25–foot portion of Lot 865 and in restricting them from parking in that area.

## II. Jurisdiction

■ Before we reach the merits, we must determine whether we have jurisdiction over this appeal. Appellees argue that we do not because, they assert, the notice of appeal was untimely. They reason that because the injunction that appellants challenge was entered via the court's order of August 15, 2005, to be timely under D.C.App. R. 4, the notice of appeal had to be filed within 30 days of that date.[6] We should dismiss the appeal for lack of jurisdiction, appellees urge, because appellants did not file their notice of appeal until December 21, 2005, long after the 30–plus days allowed for appeal had elapsed. Appellees rely on *Robinson v. Evans,* 554 A.2d 332, 335 (D.C.1989) (the "prescribed time limits for noting an appeal are mandatory and jurisdictional. If the notice of appeal is not timely filed, the appellate court has no jurisdiction to hear the case, and the appeal must be dismissed.").

As appellees note, D.C.Code §§ 11–721(a)(1), (a)(2)(A), and (a)(2)(C) (2001) give this court jurisdiction to review not only final judgments of the Superior Court, but also injunctions and interlocutory orders changing or affecting the possession of property. *Id.* Thus, as appellees assert, the trial court's August 15, 2005 order rejecting appellants' adverse possession claim as to the rear 25 feet of Lot 865, and enjoining appellants from parking there, was immediately appealable to this court. *See District of Columbia v. Eastern Trans–Waste of Md., Inc.,* 758 A.2d 1, 8 (D.C.2000) (trial court order granting partial summary judgment on one count of a multi-count complaint held appealable because it granted plaintiff's request for injunctive relief, regardless of whether all the issues in the case had been finally adjudicated). Appellees incorrectly reason, however, that because the Trustees *could have* appealed as of August 15, 2005, they were *required* to appeal within 30 days of that date or else forfeit their right to appeal as to the matters addressed in the August 15 order.

■ This issue appears to be a question of first impression in our jurisdiction, but numerous federal courts have addressed it in applying 28 U.S.C. § 1292, which, we have recognized, is the federal counterpart to D.C.Code § 11–721. *See Hagner Management Corp. v. Lawson,* 534 A.2d 343, 345 (D.C.1987) (analyzing whether an order was appealable under section 11–721, and noting that this court had adopted a test established by the Supreme Court for deciding the appealability of orders under "the corresponding federal statute governing interlocutory appeals, 28 U.S.C. § 1292"). When one of our procedural rules is nearly identical to or the functional

---

**5.** By order dated June 22, 2006, this court granted appellees' motion to substitute Ronald and Rebecca Somers as appellees in place of William Tiefel.

**6.** *See* D.C.App. R. 4(a)(1) and (a)(3) (time for noting an appeal in a civil case begins to run from date of entry of the judgment or order on the civil docket, with an additional five days allowed when the order was entered outside the presence of the parties and counsel).

equivalent of a federal procedural rule, we look to cases interpreting the federal rule for guidance on how to interpret our own. *Id.; see also Williams v. United States,* 878 A.2d 477, 480 (D.C.2005) *and Snell v. United States,* 754 A.2d 289, 292 n. 3 (D.C. 2000).

Federal courts that have addressed the issue appear to be unanimous in holding that an interlocutory appeal under 28 U.S.C. § 1292(a)(1) is permissive, not mandatory, and that a party aggrieved by an interlocutory order granting or denying an injunction may appeal immediately, or may wait and raise issues presented by the interlocutory order in an appeal from the final order disposing of a case. *See, e.g., Chicago Bd. of Educ. v. Substance, Inc.,* 354 F.3d 624, 626 (7th Cir.2003) (citing *Prudential Securities, Inc. v. Yingling,* 226 F.3d 668, 671 (6th Cir.2000)) ("Interlocutory appeal of a permanent injunction is not mandatory, as the order remains part of the case and merges with the final judgment, from which an appeal can then be taken."); *In re Frontier Props., Inc.,* 979 F.2d 1358, 1362 (9th Cir.1992) ("[W]e have never held that failure to appeal an interlocutory order barred raising the decided issue after entry of a final judgment. Rather, where an issue is determined in an interlocutory order and later incorporated into a final order, the determination of the original issue is appealable upon an appeal of the final order, thereby providing the district court with an ultimate review on all the combined issues.") (internal citations and quotations omitted); *Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 924 F.2d 550, 553 (4th Cir.1991) ("Although appeals are available under § 1292(a)(1) as a matter of right, failure to

take an available appeal does not of itself waive the right to secure review, on appeal from final judgment, of matters that could have been appealed but were not.") (citation omitted); *Matherne v. Wilson,* 851 F.2d 752, 756 n. 9 (5th Cir.1988) (interlocutory appeal is permissive, not mandatory, and a party does not forfeit right to appeal after judgment by failing to bring an interlocutory appeal); *McIntosh v. Weinberger,* 810 F.2d 1411, 1431 n. 7 (8th Cir.1987) ("failure immediately to appeal the rejection of a qualified-immunity defense does not bar raising it on appeal after trial"); *Drayer v. Krasner,* 572 F.2d 348, 353 (2d Cir.1978) ("failure to take an authorized appeal from an interlocutory order … does not preclude raising the question on appeal from the final judgment"); *see generally* 19 MOORE'S FEDERAL PRACTICE § 203.32[2][a], at p. 97–98 (3d ed.2006) (interlocutory appeal is permissive, not mandatory, and a party does not forfeit a right to appeal after judgment for failure to appeal interlocutorily). As these courts have reasoned, judicial economy is served by the consolidation of as many issues in a lawsuit as possible in a single appeal. "That is why it is almost never mandatory to file an interlocutory appeal in order to preserve an issue for appellate review." *Chicago Bd. of Educ.,* 354 F.3d at 626.[7]

Given the apparently uniform interpretation by the federal appellate courts that an appeal of an injunction interlocutorily is permissive rather than mandatory, and in light of this court's substantial caseload of appeals, we reject the suggestion that a party must appeal an interlocutory injunction within 30 days after the injunction is entered, if at all. We hold, rather, that a party adversely affected by an interlocu-

---

**7.** In a somewhat analogous criminal context involving application of the so-called collateral order exception to the final order doctrine, this court has similarly held that a defendant with a double-jeopardy right to an interlocu-

tory appeal does not forfeit review by not exercising the right, but may still raise the issue on appeal from a final judgment of conviction. *See Sanchez v. United States,* 919 A.2d 1148, 1151 n. 3 (D.C.2007).

tory injunction may await the court's final judgment before appealing—enabling the party to determine whether he is satisfied with the overall result, and possibly rendering an appeal unnecessary.

■ The remaining issue pertinent to jurisdiction is whether the August 16, 2005 order was an interlocutory order, or instead a final order that triggered the running of the 30–day appeal period. To be "final" for appeal purposes under D.C.Code § 11–721(a)(1), a trial court order must "dispose[] of the entire case as to all parties and all claims on the merits." *McAteer v. Lauterbach,* 908 A.2d 1168, 1169 n. 1 (D.C.2006). The August 16, 2005 order did not do that. Although the court ruled fully on the merits of defendants' adverse possession claims as to the 9–foot and 25–foot portions of the North 34 feet of Lot 865, there remained plaintiffs' claim that the defendants tortiously interfered with plaintiffs' use and enjoyment of their easement and plaintiffs' claim against the Estate for negligent misrepresentation. Those claims were not resolved until December 1, 2005, when the parties stipulated to dismissal of all remaining claims and the court entered an order dismissing the case from its docket. Thus, even accepting appellees' argument that the court's December 16, 2005 order of dismissal "was nugatory because the plaintiffs and Patterson's claims were already previously dismissed by [the December 1] Stipulation of Dismissal pursuant to [Super. Ct. Civ. R.] 41(a)(1)(ii)," there was no final order before December 1, 2005.[8] *Cf. United States v. Crescent City EMS,* No. 91–4150, 1994 WL 518171, at *2, 1994 U.S.

Dist. LEXIS 13504, at *4 (D.La. Sep. 20, 1994) ("Once the . . . case is dismissed . . . upon stipulation of dismissal . . . all interlocutory orders become final and subject to review on appeal"), *aff'd sub nom. Fed. Recovery Servs. v. United States,* 72 F.3d 447 (5th Cir.1995). Accordingly, we agree with appellants that their notice of appeal filed December 21, 2005, was timely, and that we have jurisdiction to consider the merits.

### III. Adverse Possession

■ The Trustees seek review of the trial court's grant of partial summary judgment that rejected their claim to adverse possession of the northernmost 25 feet of Lot 865. We "review a grant or denial of a motion for summary judgment *de novo* to determine whether any genuine issue of material fact exists and whether the prevailing party was entitled to judgment as a matter of law." *Allworth v. Howard Univ.,* 890 A.2d 194, 200 (D.C. 2006) (quoting *Columbia Plaza Tenants' Ass'n v. Columbia Plaza Ltd. P'ship,* 869 A.2d 329, 332 (D.C.2005) (other citations omitted)). "We review the record in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of that party." *Id.* "We will affirm the entry of summary judgment if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Id.* (quoting *Kelley v. Broadmoor Co-op. Apartments,* 676 A.2d 453, 456 (D.C.1996) (citations and internal quotation marks omitted)). Regarding appellants' claim to

---

8. The December 16, 2005 (but not the December 1, 2005 Stipulation of Dismissal) is akin to the order issued in *Robinson v. Evans,* 554 A.2d 332, 335 (D.C.1989), a case on which appellees rely, because it "grant[ed] no new relief to anyone" and therefore "[could] not serve as the final order for the purpose of an appeal." 554 A.2d at 335.

*Lynn v. Lynn,* 617 A.2d 963, 969 (D.C. 1992), the other case on which appellees rely, explained that a partial summary judgment order transferring possession of property was immediately appealable, *see id.* at 969, but did not address the issue of whether the appeal of such an order may be deferred until final judgment.

adverse possession of the 25–foot–long area in dispute, we will "set aside the trial judge's findings as to adversity only if they are clearly erroneous and without evidence to support them." *Smith v. Tippett,* 569 A.2d 1186, 1192 n. 9 (D.C.1990).

The parties agree that the Patterson deed to Lot 865 and the deed to Lot 810 (containing right-of-way language that the Patterson deed incorporated) established a right-of-way for ingress and egress over the North 34 feet of lot 865. The Trustees' claim, which the trial court rejected, is that the right-of-way was extinguished, years ago, through Patterson's adverse use of the entire North 34 feet. To prove adverse possession, the Trustees were required to show that there was actual, exclusive, continuous, open and notorious possession of the area in dispute for a period of 15 years. *See Smith,* 569 A.2d at 1190; *see also* D.C.Code § 12–301–1 (2001) (providing that actions for the recovery of lands may not be brought after the expiration of 15 years). The Trustees made that showing to the trial court's satisfaction with respect to the 9–foot patio area, where the brick wall enclosure that Patterson erected enabled him to meet all of the requirements for adverse possession. As to the northernmost 25 feet, however, the trial court found it undisputed that plaintiffs/appellees and/or their lessees regularly used the remaining 25–foot area of Lot 865 for ingress and egress, both when no vehicle was parked there and when a vehicle was parked there without entirely obstructing ingress and egress. The record supports the court's finding. Defendants/appellants stated explicitly in their Answer to the Complaint that while

> Patterson routinely parked[] his vehicle on the remaining 25–foot portion of Lot [865,][he] denies that [his] use of the rear for parking was hostile to the plaintiffs' ownership of Lots 809 and 810 and an obstruction to the Plaintiffs' access to their own properties.... Moreover, Mr.

Patterson states that the occupants of Lots 809 and 810 have continually used the right of way over Lot 895 for ingress and egress purposes since 1959.

█ In order to have exclusive possession for the purpose of establishing adversity, a claimant must "hold possession of the property for himself as his own and not for another.... [T]he adverse claimant's possession cannot be shared with the true owner." *Smith,* 569 A.2d at 1190. The trial correctly concluded that adverse possession was not shown because Patterson did not continuously possess the 25–foot strip and because his neighbors constantly shared the right-of-way. For the same reason, the record shows that Patterson did not exclusively possess the right-of-way area. There is no claim that the Trustees acquired any better claim than Patterson had. Accordingly, the trial court properly rejected the Trustees' defense that appellees' right-of-way across the northernmost 25 feet of Lot 865 was extinguished and their argument that they are entitled to exclusive enjoyment of the 25–foot area.

## IV. Parking

█ The trial court said that it would "grant summary judgment in plaintiffs favor" as to their request that "defendant Trustees be enjoined from parking in the remaining 25 feet of the easement." Therefore, the court ordered that "defendant Trustees shall be permanently enjoined from parking in the rear 25 feet of their Lot [865], except as specifically set forth in the deed of easement." We construe the injunction as an absolute ban on appellants' parking in the rear of Lot 865 because the court explained, in footnote 4 of its order, that "the remaining 25 feet should not be used for parking by the Trustees," and also because, we hold, the

deed of easement does not specifically describe any parking rights as to Lot 865.

Appellees urge a contrary interpretation about what the deed of easement (and, hence, the court's order) permits with respect to parking. They say that the relevant land instrument permits the Trustees to park in the rear of Lot 865, but only within the 8 feet immediately north of the patio, and not in the remaining, northernmost 17 feet. Effectively, they say, this means that appellants may not park an automobile on Lot 865, because eight feet is not enough space to park anything other than a motorcycle or a similarly small vehicle. Appellees' reasoning on this point is premised on the language of the Eldridge deed, conveying ownership of Lot 810, together with a right-of-way for ingress and egress "over the North or rear 34 feet by full depth thereof of Lots 809 and 865," and *"[r]eserv[ing] to the grantors a Right of Way for parking over the North or rear 17 feet by full width thereof of the above described property"* (italics added). Appellees construe the italicized language, which they seem to assume was incorporated in the deed to Lot 865 along with the right-of-way clause, as reserving a 17–foot area in the North 34–foot space of Lot 865 for parking by the owners of Lot 865.[9] They also argue, however, that "the reservation's literal language makes no practical sense" because it frustrates the purpose of the ingress/egress easement. On that basis, they urge this court to "resolve the latent ambiguity regarding where the owner of Lot 865 may park" by construing the parking reservation clause as permitting (or, perhaps more accurately, by reforming

the clause to permit) the Trustees to park within the *southernmost* 17 feet of the North 34–foot area. They contend that because 9 feet of that southernmost 17–foot area is in use as a walled-off patio, only an 8–foot portion of the southernmost 17–foot area remains as the area of Lot 865 within which the Trustees may park.

We reject appellees' interpretation because it misapprehends the plain language of the parking reservation clause. The parking reservation clause—which, we note again, is found in the Eldridge deed— reserved to the "grantors," for parking purposes, a portion of the land that was conveyed. The land that the Eldridge deed conveyed was Lot 810, and thus the deed reserved to the grantors (Sharek and his wife, the owners of Lot 809) a right-of-way for parking over the northernmost 17 feet of Lot 810. In other words, Lot 810– not Lot 865–is the "above-described property" as to which Sharek and his wife, as the grantors of Lot 810, reserved a right-of-way for parking over the North 17 feet. We decline appellees' suggestion that we read the phrase "above-described property" in the Eldridge deed's parking reservation clause to be a reference to both Lot 809 and Lot 865. Simply put, the parking reservation clause of the Eldridge deed (as distinguished from the deed's right-of-way clause) does not pertain to Lot 865.[10] We therefore reject appellees' argument that we should read the parking reservation clause as reserving parking rights within a 17–foot area for the owners of Lot 865.

■ Appellees' alternative argument is that no one may park within an area that

---

9. Patterson similarly asserted, in his Answer to the original Complaint, that the parking reservation clause reserved parking rights for the owner of Lot 865 within the northernmost 17 feet of the property.

10. Not surprisingly, the Patterson deed (to Lot 865) did not incorporate or refer to the

Eldridge deed's parking reservation clause. Rather, the only portion of the Eldridge deed that is incorporated in the deed to Lot 865 is the language burdening the North 34 feet of Lot 865 with a "right of way ... for purposes of ingress and ingress."

is subject to an easement for ingress/egress unless there is a specific reservation of parking rights. They assert that our decision in *Steinkamp v. Hodson*, 718 A.2d 107, 108 (D.C.1998), establishes this rule, and that nothing reserved for the owners of Lot 865 a right to park anywhere within the North 34-foot easement area.

We disagree. *Steinkamp* does not establish the principle that appellees assert and does not really assist us in resolving the issues presented here. The easement at issue in *Steinkamp* spanned portions of three adjacent lots, and the easement bound the benefiting landowners to "maintain unobstructed the said easement and right-of-way ... for the purpose of [ingress and egress]." 718 A.2d at 110 (quotations and citation omitted) (brackets in the original). We affirmed the trial court's order enjoining defendant/land owner Steinkamp from parking in the portion of the easement area that was on land owned by plaintiff/neighboring land owner Hodson. We agreed with the trial court that "the unambiguous language of the easement prohibits parking in the easement as outside the right of ingress and egress." *Id.* at 111. We also quoted the opinion in *Penn Bowling Recreation Center, Inc. v. Hot Shoppes, Inc.*, 86 U.S.App. D.C. 58, 179 F.2d 64 (1949), in which the court said that "[t]he use of the easement for purposes of ingress and egress does not include its use for parking purposes," *Id.* at 61, 179 F.2d at 67, a statement the D.C. Circuit made to explain why it was appropriate to enjoin Penn Bowling, which had a right-of-way for ingress/egress across land belonging to Hot Shoppes, from parking on the right-of-way.

However, in *Steinkamp* we did not analyze the propriety of the Steinkamps parking their vehicle so that it protruded onto a portion of the easement area that was on their own property, a scenario that would be akin to the situation here. Similarly, in *Penn Bowling*, the D.C. Circuit had no occasion to address the issue presented here—the issue of whether the owner of the servient land (*i.e.*, the land subjected to the right-of-way) could park within a right-of-way area on its own land. Finally, as already noted, under the land instrument at issue in *Steinkamp*, obstructions such as parking were expressly prohibited by the language of the deed establishing the easement. We did not address the question of whether parking within the easement area might be permitted if the easement had not explicitly required the parties to "keep unobstructed" the easement area at all times. Here, by contrast, the land instruments establish a "right of way for purposes of ingress and egress" over the North 34 feet, but contain no language requiring that all portions of the easement be kept unobstructed at all times.

Thus, *Steinkamp* does not answer the question of whether appellants, as owners of servient Lot 865, may park within the North 34-foot ingress/egress area. A number of our other decisions do provide guidance, however. In *Kreuzer v. George Washington Univ.*, 896 A.2d 238 (D.C. 2006) (dealing with issues relating to a party wall that amounted to a "mutual easement"), for example, we cited the RESTATEMENT (THIRD) OF PROPERTY (SERVITUDES), § 2.17 cmt. a, at 261(2000), for the principle that "a servient estate may do what they will to their own property so long as they do so without detriment to the dominant servitude." 896 A.2d at 243. We earlier applied that principle in *Tanaka v. Sheehan*, 589 A.2d 391(D.C.1991). The issue in *Tanaka* was whether an electronically locked gate would unreasonably interfere with ingress and egress. We rejected the view that "any encroachment or obstruction [of a right-of-way] unreasonably interferes with the easement as a

matter of law[,]" *id.* at 395 n. 5, and we held that a "right of way for ingress and egress without any limiting language [did] not prevent the servient owner from constructing gates or fences." *Id.* at 396.[11] We noted that the reference in the land instrument to a "fifteen-foot easement area" did not prohibit all encroachments within the 15–foot area, and we rejected the view that the easement holder had a "right of unfettered access over the entire fifteen foot easement area guaranteed by [appellants'] deed." *Id.* at 395–96 (brackets in original). We said that the "measurements merely describe the area for identification purposes and do not evidence an intent to grant a right of use of the full fifteen feet," *id.* at 396, and that the right-of-way reserved "provides for a bare right of way; it contains no reservation of [a] free right of way." *Id.* (internal quotation marks and citation omitted). We held that the court was required to balance the rights of the parties in the easement. *Id.* at 397 ("a balancing test must be applied to weigh the interests of the dominant and servient estates in the easement," with "the servient owner's need for the gate . . .

balanced against the extent of the interference with the reasonable use of the right of way by the dominant estate holder"). We concluded that a remand was required for the trial judge to "engage in the appropriate balancing uninfluenced by the erroneous conception that any encroachment in the easement area was forbidden." *Id.* at 398.

Here, the resolution of the parking issue does not turn, as the trial court's analysis and order suggest, on whether the deed of easement specifically permits parking on Lot 865. Rather, the pertinent fact is that the deed of easement does not contain language that prohibits any and all encroachments or obstructions in the right-of-way for ingress and egress that is reserved across Lot 865. Accordingly, under the principles that we applied in *Kreuzer* and *Tanaka*, the Trustees, as the holders of servient Lot 865, retain a right to park within the remaining 25–foot area right-of-way area provided they can do so without unreasonably interfering with appellees' right-of-way for ingress and egress.[12]

---

**11.** In *Tanaka*, w e cited "the universally held rule that absent a contrary intent, the servient owner may erect gates or fences provided they do not unreasonably interfere with the right of passage." 589 A.2d at 395. That rule is reflected in cases such as *Figliuzzi v. Carcajou Shooting Club*, 184 Wis.2d 572, 516 N.W.2d 410, 416 (1994) ("An owner of property subject to an easement may make all proper use of the land, including the right to make changes in or upon it, but the owner may not unreasonably interfere with the use by the easement holder."); *Cooper v. Sawyer*, 48 Haw. 394, 405 P.2d 394, 403 (1965) ("the owner of the land subject to an easement has all the rights and benefits of ownership of the fee consistent with the enjoyment of the easement. Conversely, he has no right materially to impair or unreasonably to interfere with the use of the easement by the owner thereof") (quoting *Tyler Co. v. Hansen*, 20 N.J.Super. 309, 90 A.2d 31, 33 (1952)); *Los Angeles v. Igna*, 208 Cal.App.2d 338, 25 Cal.Rptr. 247,

249 (1962) ("[G]enerally the servient owner has the right to use the land in any way not inconsistent with the rights granted under the easement or in such way as not to encroach upon or interfere with the means and facilities which the owner of the easement may lawfully use."); *Feld v. Young Men's Hebrew Ass'n of Vicksburg*, 208 Miss. 451, 44 So.2d 538, 540 (1950) ("The grant of a right of way over land does not pass any other right or incident. The owner of the soil retains full dominion over his land subject merely to the right of way. He may make any use of his land which does not interfere with a reasonable use of the way.") (quotation marks and citation omitted).

**12.** *Cf. Del Fuoco v. Mikalunas*, 118 A.D.2d 980, 500 N.Y.S.2d 84, 85 (N.Y.App.Div.1986) (noting that obstructions placed upon a right-of-way never effectively interfered with defendants' use and enjoyment of the right-of-way).

The Trustees argue that "the parties intended that the rear of Lot 865 be used for parking," and cite as evidence that Patterson "continuously parked cars behind Lot 865 since 1959," making "continuous and unchallenged use" of the easement area. Appellees, too, say that in the years prior to 2002, "Patterson never parked his car in a way that interfered with or stopped the residents of Lot 809 and 810 from using the easement." If true, these assertions may demonstrate no more than "neighborly accommodation" by the owners of Lots 809 and 810, *i.e.*, "implied permission for [Patterson's] use [of the ingress/egress area for parking], granted *sub silentio* at each encounter." *Chaconas v. Meyers*, 465 A.2d 379, 384 (D.C.1983). Such permission would not confer on appellants a *right* to park, *see id.*, that they do not already possess, but may be relevant on the issue of whether it is possible to park on Lot 865 without unreasonably interfering with appellees' enjoyment of the right-of-way.

We reach no conclusion about whether it actually is possible for appellants to park within the rear of Lot 865 without unreasonably impeding ingress and egress by appellees.[13] Answering that question will require a further inquiry into the facts by the trial court, and will also require the court to balance appellants' need for parking on Lot 865 against the extent of the interference with appellees' reasonable use of the right-of-way. We therefore vacate the order enjoining appellants from parking in the rear 25–foot area of Lot 865

"except as specifically set forth in the deed of easement," and remand the case to the trial judge to determine, with the requisite balancing and under the principles described above, whether appellants can (and thus may) park in the rear of Lot 865 without unreasonably interfering with appellees' use of their right-of-way.[14]

*Affirmed in part, reversed in part, and remanded with instructions.*

13. In the view of this panel, the photographs included in appellants' Appendix showing a vehicle parked in the rear of Lot 865 are inconclusive as to whether such parking unreasonably interferes with ingress and egress by a driver trying to access the rear of Lot 809 or 810.

14. Without preordaining how the parties or the court might resolve the issue, we note that

District of Columbia Municipal Regulations contain regulations governing off-street parking that establish minimum sizes for automobile parking spaces and aisles, and that may (or may not) be pertinent to the issue of whether there is adequate space in the rear of Lot 865 for concurrent parking and ingress/ingress. *See* 11 DCMR §§ 2115.1, 2115.3, 2117.5 and 2117.6.